**Balbir SINGH, Petitioner,**

v.

**IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.**

No. 98–70663

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 11, 2000

May 25, 2000.

Maziar Mafi, Santa Ana, California, for the petitioner.

James A. Hunolt, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for the respondent.

Before: PREGERSON, FERGUSON, and WARDLAW, Circuit Judges.

WARDLAW, Circuit Judge:

Balbir Singh ("Singh") petitions for review of a Board of Immigration Appeals ("BIA") decision dismissing his appeal from an Immigration Judge's denial of his motion to reopen deportation proceedings held in absentia. We have jurisdiction pursuant to 8 U.S.C. § 1105a (1996).[1] Because the BIA erred when it relied upon newly-created evidentiary standards in dismissing Singh's appeal, we grant the petition.

I.

Singh, a 38-year-old native and citizen of India, entered the United States without inspection on August 8, 1993. On January 14, 1994, Singh filed an application for asylum claiming persecution based on religion, membership in a particular social group, and political opinion. Singh asserted he is "a devout follower of the Sikh faith" and an active member of the Akali Dal political party. Singh's declarations described numerous instances of violence and persecution by Indian police authori-

ties and "anti-Sikh antagonists." The asylum officer denied the asylum application. An order to show cause issued on February 8, 1996, alleging that Singh was deportable. Singh was ordered to appear before an immigration judge on June 19, 1996.

Singh did not appear at his asylum hearing. The Immigration Judge ruled that because Singh had received notice and a reasonable opportunity to be present, and had not presented any cause for his absence, the hearing could proceed in absentia. After hearing evidence presented by the INS, the Immigration Judge found Singh to be deportable.

On September 26, 1996, Singh filed a timely motion to reopen his deportation hearing. See 8 U.S.C. § 1252b(c)(3)(A) (1996) (motion to reopen deportation proceedings held in absentia must be filed within 180 days). In support of his motion to reopen, Singh declared that he "tripped accidently in the home of his friend Pardeep Singh," twisted his foot so severely that he could not go to work, and "remained confined to bed for two weeks." Singh's sworn statement also asserted that he could not afford to see a doctor "due to financial strain," but that he took Tylenol caplets for pain and his friend massaged his injured foot with oil. Singh also submitted a corroborative declaration from Pardeep Singh, who witnessed the accident and cared for Singh.

The Immigration Judge denied the motion to reopen, stating that "the court is unconvinced that [Singh]'s injury constitutes a serious illness." The Immigration Judge noted that Singh failed to see a doctor for his injury or to promptly contact

1. Because the final order of deportation was filed after October 30, 1996 and the case was pending before April 1, 1997, we have jurisdiction to review the BIA's decision under the transitional rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (the "IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009 (Sept. 30, 1996), *as amended by* Pub.L. No. 104–302, 110 Stat. 3656 (Oct. 11, 1996). The transitional rules provide that the Immigration and Naturalization Act ("INA") applies as codified prior to the passage of the IIRIRA. *See* IIRIRA §§ 306(c)(1), 309(a); *Duarte de Guinac v. INS*, 179 F.3d 1156, 1158 n. 2 (9th Cir.1999); *Kalaw v. INS*, 133 F.3d 1147, 1150 (9th Cir.1997). We therefore have jurisdiction under the pre-IIRIRA judicial review provision of the INA. *See* 8 U.S.C. § 1105a (1996).

and inform the court of his inability to appear. Singh appealed to the BIA, which dismissed the appeal on March 20, 1998. *See In re B–A–S–,* Interim Decision (BIA) 3350 (1998) (en banc). The BIA reasoned that Singh had not provided "sufficient evidence" that his injury amounted to a "serious illness" because he presented neither medical evidence from a doctor nor a declaration from his employer. *Id.* In dissent, Board Member Rosenberg stated, "the majority's suggested requirements impose an excessively high evidentiary test to be met by a respondent who provided sworn statements concerning his illness, explaining its severity and why he did not seek medical treatment." *Id.* (Rosenberg, Board Member, dissenting). Citing new requirements imposed by the majority to meet this test, as to which Singh had no notice, Board Member Rosenberg concluded that the case should be remanded to allow Singh to comply with the "newly enunciated criteria." *Id.*

█ Singh timely petitioned for review.[2]

## II.

█ We review the denial of a motion to reopen for abuse of discretion. *See INS v. Doherty,* 502 U.S. 314, 324, 112 S.Ct. 719, 116 L.Ed.2d 823 (1992); *Sharma v. INS,* 89 F.3d 545, 547 (9th Cir.1996). Unless the BIA acted "arbitrarily, irrationally, or contrary to law," we should not disturb the BIA's ruling. *Eide–Kahayon v. INS,* 86 F.3d 147, 149 (9th Cir.1996). We review de novo the BIA's "determination of purely legal questions regarding the requirements of the Immigration and Nationality Act." *Arrieta v. INS,* 117 F.3d 429, 430 (9th Cir.1997) (quoting *Tedeeva v. INS,* 88 F.3d 826, 827 (9th Cir.1996)).

█ An order for deportation entered in absentia may be rescinded "if the alien demonstrates that the failure to appear was because of exceptional circumstances." 8 U.S.C. § 1252b(c)(3)(A). The statute de-

fines "exceptional circumstances" as "circumstances (such as serious illness of the alien or death of an immediate relative of the alien, but not including less compelling circumstances) beyond the control of the alien." § 1252b(f)(2). The statutory language itself is not imbued with any additional meaning. Nor does the legislative history provide much elaboration upon the meaning of the statutory language:

> Among the few explicit statements of congressional intent in the history of section 242B [8 U.S.C. § 1252b (1996)] is a sentence in the conference committee report regarding the proper interpretation of the statutory standard justifying nonappearance: "Additionally, the conferees expect that in determining whether an alien's failure to appear was justifiable, the Attorney General will look at the totality of the circumstances to determine whether the alien could not reasonably have been expected to appear."

Iris Gomez, *The Consequences of Nonappearance: Interpreting New Section 242B of the Immigration and Nationality Act,* 30 San Diego L.Rev. 75, 151 (1993) (citing H.R. Rep., No. 955, 101st Cong., 2d Sess. 132 (1990)). As a result, the body of law interpreting "exceptional circumstances" looks to the particularized facts presented in each case. *See Sharma v. INS,* 89 F.3d 545 (9th Cir.1996) (petitioner's 45 minutes to 1 hour tardiness, because of traffic difficulties, did not qualify as an exceptional circumstance beyond the control of petitioner); *Nazarova v. INS,* 171 F.3d 478 (7th Cir.1999) ("exceptional circumstances" existed where the petitioner missed her hearing because she was waiting for her interpreter to return to his office); *de Morales v. INS,* 116 F.3d 145 (5th Cir. 1997) (no exceptional circumstances when petitioners never appeared at their hearing because their car broke down halfway to the courthouse; they returned home rath-

---

**2.** Singh also filed a motion to reconsider, which is currently pending in the BIA. We may review the denial of a motion to reopen while the motion to reconsider is pending.

*See Escobar–Ramos v. INS,* 927 F.2d 482 (9th Cir.1991); *Dhangu v. INS,* 812 F.2d 455 (9th Cir.1987).

er than proceeding to court, and made a cursory attempt to find the court's phone number).

◼ Here, the BIA denied the motion to reopen because of lack of evidence. The BIA ruled that "[a]ssuming that a twisted foot can amount to exceptional circumstances," i.e. "serious illness," Singh had not provided "sufficient evidence that his injury falls into this category." *See In re B–A–S–*, Interim Decision (BIA) 3350. Yet the regulation, 8 C.F.R. § 3.2(c)(1), provides only that "[a] motion to reopen proceedings ... shall be supported by affidavits or other evidentiary material." Singh complied with this section when he presented his affidavit, and that of a witness, to support his claim that his injury rose to the level of exceptional circumstances. At the time when Singh submitted his evidence, neither the statute, the regulations, nor the applicable case law required a petitioner to produce an affidavit from a doctor or his employer, or to contact the court immediately.[3] The BIA imposed these requirements upon Singh when it relied exclusively on Singh's failure to provide any medical evidence or documentary evidence from his employer, or to contact the Immigration Court to inform it of his inability to appear. Singh had no notice that he was required to provide any of these specific pieces of evidence which the BIA viewed as fatal to his petition, and was given no opportunity to provide them.

We have held that the BIA may not rely on newly-created evidentiary standards to deny a motion to reopen a deportation proceeding held in absentia. *See Arrieta v. INS*, 117 F.3d 429, 432 (9th Cir.1997). In *Arrieta*, the petitioner failed to appear at the proceeding and moved to reopen her case, contending that she did not receive notice of her hearing as required by statute. *See id.; see also* 8 U.S.C. § 1252b(a)(2). In support, Arrieta proffered her letter and a letter from her brother stating that the certified mailing notice (which had been returned to the

Office of the Immigration Judge marked "attempted") was never delivered to her at her mailing address. *See Arrieta*, 117 F.3d at 430. The Immigration Judge and the BIA determined that she had failed to overcome the presumption of effective delivery of the certified notice of hearing because she failed to provide substantial evidence such as "documentary evidence from the Postal Service, third party affidavits, or other similar evidence" demonstrating improper delivery that was not her fault. *Id.* We held that the BIA erred by imposing a new standard of proof upon Arrieta, reasoning "that Arrieta certified to the truth of her letter, and when she submitted it to the Immigration Judge, *Grijalva* [a BIA decision announcing the new standard of proof] had not yet been decided and there was no established standard of proof required before the BIA for Arrieta to follow." 117 F.3d at 432 (citing *In re Grijalva*, Interim Decision (BIA) 3246 (1995) (establishing standard of proof required to demonstrate the affirmative defense of nondelivery or improper notice)).

The rationale of *Arrieta* controls the disposition of this case. As in *Arrieta*, the BIA relied on a previously unannounced evidentiary standard to reject Singh's appeal. Singh had no notice that he would be required to provide "medical evidence" or additional declarations, evidentiary requirements the BIA imposed for the first time when it dismissed Singh's appeal.

The BIA's action in this case was even more egregious, however, because in a decision handed down the same day as Singh's, the BIA adhered to an evidentiary standard in conflict with that imposed upon Singh. *See In re J–P–*, Interim Decision (BIA) 3348 (1998) (en banc). In that case, the BIA found "the lack of medical evidence or other evidence establishing, in detail, the seriousness of the respondent's illness to be *one of the several factors*" in determining if the burden of proof has been met. *Id.* (emphasis added). The

---

**3.** Nor do they today. *See* 8 C.F.R. § 3.23.

BIA there also ruled that, in lieu of evidence from a doctor, a "claim may [be] substantiated, through detailed affidavits from respondent,[4] roommates, friends, and co-workers, attesting to the extent of his disability and the remedies used." *Id.*[5] Singh in fact presented his own declaration, as well as a friend's corroborating declaration—proof which may well have satisfied the *In re J–P–* standard. *Cf. Eide–Kahayon,* 86 F.3d at 149 (quoting *Israel v. INS,* 785 F.2d 738, 740 (9th Cir. 1986)) ("The BIA acts arbitrarily when it disregards its own precedents and policies without giving a reasonable explanation for doing so.").

■ Fundamental fairness requires that Singh be given an opportunity to satisfy the BIA's evidentiary requirements. We have held that "[d]ue process requires that an alien receive a full and fair hearing." *Jacinto v. INS,* 208 F.3d 725 (9th Cir. 2000); *see Colmenar v. INS,* 210 F.3d 967, 971 (9th Cir.2000). A full and fair hearing includes "a reasonable opportunity to present evidence." *Colmenar,* 210 F.3d at 971; *cf. Campos–Sanchez v. INS,* 164 F.3d 448, 450 (9th Cir.1999) ("the BIA must provide a petitioner with a reasonable opportunity to offer an explanation of any perceived inconsistencies that form the basis of a denial of asylum"); *Castillo–Villagra v. INS,* 972 F.2d 1017, 1029 (9th Cir.1992) ("the Board erred in taking notice of the change of government without providing

the petitioners an opportunity to rebut the noticed facts"); *see also* 8 U.S.C. § 1252(b)(3) (1994) ("the alien shall have a reasonable opportunity to examine the evidence against him [and] to present evidence on his own behalf"). The failure to give notice and an opportunity to respond in the face of ever-shifting evidentiary standards denied Singh a full and fair hearing. As a result Singh was prejudiced[6] because the evidence he presented appears to be sufficient under either of the two other evidentiary standards contemporaneously employed by the BIA.[7] *See Campos–Sanchez,* 164 F.3d at 450 (stating that a denial of full and fair hearing that results in prejudice violates due process); *Colmenar,* 210 F.3d at 971 ("prejudice ... means that the outcome of the proceeding may have been affected by the alleged violation."). Moreover, had Singh been notified of the newly announced evidentiary requirements, he may very well have been able to secure the necessary affidavits or declarations.

■ Because the BIA improperly announced a new evidentiary standard in Singh's case,[8] and, as a result, denied Singh his due process right to a full and fair hearing, we grant the petition and remand to the BIA with instructions to remand for further proceedings before the immigration judge consistent with this disposition.

---

**4.** Furthermore in *In re Kanwaljit Singh,* Interim Decision (BIA) 3324 (1997), the BIA concluded that "exceptional circumstances" were established when Kanawljit Singh "submitted a signed affidavit evidencing that his stepson's illness was responsible" for his tardiness. In Singh's case the BIA found a similar affidavit insufficient.

**5.** The BIA nevertheless rejected J–P–'s claim because he had not submitted any of these possible forms of evidence. *See J–P–,* Interim Decision (BIA) 3348.

**6.** Because we must grant the petition and remand under *Arrieta,* Singh need not have demonstrated prejudice sufficient to establish a due process violation.

**7.** *See J–P–,* Interim Decision (BIA) 3348(stating that a "claim may [be] substantiated, through detailed affidavits from respondent, roommates, friends, and co-workers, attesting to the extent of his disability and the remedies used."); *Kanwaljit Singh,* Interim Decision (BIA) 3324 (finding exceptional circumstances when alien "submitted a signed affidavit evidencing that his step-son's illness was responsible" for his tardiness).

**8.** The BIA also erred when it considered counsel's statements in briefs as evidence of Singh's inconsistency. *See Matter of Ramirez–Sanchez,* 17 I. & N. Dec. 503 (BIA 1980) (statements in motions are not evidence and are therefore not entitled to evidentiary weight).