# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RONALD M. ZETINO,

          *Petitioner,*

v.

ERIC H. HOLDER JR., Attorney General,

          *Respondent.*

No. 08-70390

Agency No.
A094-175-859

ORDER AND
AMENDED
OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
October 9, 2009—Pasadena, California

Filed February 18, 2010
Amended August 30, 2010

Before: Cynthia Holcomb Hall and Richard C. Tallman,
Circuit Judges, and David M. Lawson,* District Judge.

Opinion by Judge Tallman

---

*The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

12979

## COUNSEL

Niels W. Frenzen, Esq., (argued), University of Southern California Law School Immigration Clinic, Los Angeles, California, for petitioner Zetino.

Sunah Lee, Esq., (argued), U.S. Department of Justice, Civil Division/Office of Immigration Litigation, Washington, D.C., Ronald E. LeFevre, Esq., Department of Homeland Security, Office of the District Counsel, Los Angeles, California, for respondent Attorney General Holder.

---

## ORDER

The opinion filed on February 18, 2010, and reported at 596 F.3d 517, is amended. The amended opinion filed concurrently with this order is substituted in its place.

With the filing of the amended opinion, the panel has unanimously voted to deny the petition for panel rehearing. Judge Tallman has voted to deny the petition for rehearing en banc, and Judges Hall and Lawson so recommend. The full court has been advised of the petition for rehearing and petition for rehearing en banc, and no judge of this court has requested a vote on the petition for rehearing en banc. Fed. R. App. P. 35(f).

The petition for rehearing and the petition for rehearing en banc are DENIED. No further petitions for rehearing or rehearing en banc may be filed.

---

## OPINION

TALLMAN, Circuit Judge:

Ronald Zetino ("Zetino"), a native and citizen of El Salvador, petitions for review of a Board of Immigration Appeals ("BIA") decision upholding an Immigration Judge's ("IJ") denial of his applications for asylum and withholding of removal. We deny his challenges on the merits.

# I

Zetino illegally entered the United States on December 5, 1989, at San Ysidro, California. Zetino was detained on May 1, 2001, and placed in removal proceedings on May 15, 2001. He was charged with removability pursuant to Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled.

At Zetino's first removal hearing on May 31, 2001, the IJ informed him of his right to counsel and right to call witnesses on his behalf. The IJ also provided Zetino with a list of free legal aid services. Zetino acknowledged those rights, waived them, admitted to the allegations against him, and conceded removability. Zetino informed the IJ that he feared persecution upon return to El Salvador, at which time the IJ gave him an application for asylum. At a continued removal hearing on June 11, 2001, Zetino did not submit an application for asylum, but instead requested a continuance to find an attorney. The IJ granted that request, noting that Zetino claimed to have obtained an attorney who had decided not to represent him "at the last minute."

Zetino's next removal hearing took place on September 27, 2005, after an additional continuance during which he remained incarcerated. At that hearing, the IJ once again informed Zetino of his right to counsel, which Zetino acknowledged. The IJ then granted Zetino yet another continuance to obtain counsel. Zetino finally filed his application for asylum on October 25, 2005.

Zetino's hearing on the merits of his asylum application began on May 14, 2007. Zetino appeared *pro se*, apparently unable to obtain counsel in the six years since his first hearing. The IJ took testimony from Zetino, his mother, and his sister.

Zetino testified that he was afraid to return to El Salvador because he had been told that in 1993 six members of his family had been killed by gunfighters attempting to steal his grandfather's land. Zetino noted that this event took place after his illegal arrival in the United States and that he only found out about it through word of mouth. When the IJ asked him to explain the motive for the murders, Zetino responded, "Some farmers who supposedly . . . were my grandfather's friends and they wanted more land so they could cultivate on that [sic] and my grandfather did not want to release the land to them." Zetino also testified that he feared gang members would attempt to recruit or harm him. He stated simply, "There are too many gang members. I don't think that I will be able to work there at [inaudible] with ease."

Zetino's mother testified that masked gunmen had killed members of her family for "revenge because of some properties, some land [sic]." Zetino's sister testified that she was not in El Salvador at the time of the alleged killings.

After taking testimony, the IJ rendered an oral decision in which she determined Zetino had testified credibly but still failed to demonstrate a well-founded fear of persecution based on statutorily-protected grounds. The IJ ruled that Zetino failed to establish a nexus between the murder of his relatives or gang recruitment and a protected ground such as race, religion, nationality, membership in a particular social group, or political opinion. As to the killing of his relatives, the IJ noted that it "was clearly a personal dispute, if anything, amongst the ones who wanted to cultivate the land next door . . . . This is not a basis for asylum or withholding of removal under the Act."

On September 6, 2007, Zetino filed a *pro se* Notice of Appeal to the BIA stating that he disagreed with the IJ's decision that "[he] didn't prove [his] case." Zetino's Notice of Appeal contained a well-articulated statement of his case. He argued that his "fear of persecution and torture is based on the

assassination of [his] family members and relatives by 11 masked gunmen who assassinated them and who are still at large." He also stated that he feared "gang members who are at large, who sell drugs and arms, who also hurt and rob people like [him], because [he] also [has] tattoos (none gang-related) and they would mistake [him] for being a rival gang member."

On October 20, 2007, Zetino was transferred from the San Pedro Detention Complex in Los Angeles, California, to the South Texas Detention Complex in Pearsall, Texas. On October 23, 2007, the BIA issued a briefing schedule notifying Zetino of a November 13, 2007, deadline to file an appellate brief. Zetino properly notified the BIA of his move with a change of address form on October 31, 2007, and as a result the BIA granted him a filing extension from his original deadline of November 13, 2007, to November 30, 2007. Despite notice of the extension, Zetino did not file a brief before this extended deadline.

Five days after missing the filing deadline, on December 5, 2007, Zetino secured the representation of the University of Southern California Law School Immigration Clinic. On December 14, 2007, his counsel filed a Motion to Accept Late Brief and Motion for Extension of Time requesting the BIA accept a late brief or extend the filing deadline to "accommodate student exams and the ensuing winter break." The BIA found "the reasons stated by the respondent insufficient for [it] to accept an untimely brief in [its] exercise of discretion." The BIA also denied the extension request "as it was received after the expiration of the filing deadline."

Despite Zetino's failure to properly file an appellate brief, the BIA considered the merits of his application because he had sufficiently articulated his challenges to the IJ's decision in his Notice of Appeal. The BIA subsequently upheld the IJ's determination on the merits. The BIA reasoned that neither Zetino's fear of "the eleven unidentified masked gunmen who

fatally shot his aunt, uncle, and at least three cousins in 1993 and who remain at large" nor his fear of "gang members [who] might mistake him for a member of a rival gang because he has tattoos" established a well-founded fear of persecution "on account of his race, religion, nationality, membership in a particular social group, or political opinion." The BIA supported its conclusion by noting,

> It is well-established that an asylum applicant's fear of harm resulting from general conditions of violence and civil unrest affecting the home country's populace as a whole does not constitute a "well-founded fear of persecution" within the meaning of the Act.

Furthermore, the BIA reasoned that Zetino's fear of harm by criminals or gangs did not "establish that he belongs to a 'particular social group' within the meaning of section 101(a)(42)(A) of the Act." The BIA relied on our decision in *Arteaga v. Mukasey*, 511 F.3d 940 (9th Cir. 2007), where we held that a tattooed alien's membership in a violent criminal gang was not "social group" membership for withholding of removal purposes.

Zetino now timely petitions for review of the BIA's decision to reject his untimely brief as well as its decision to uphold the IJ's ruling denying his applications for asylum and withholding of removal.[1] He presents three distinct challenges, two procedural and one substantive.

First, Zetino claims the BIA's discretionary ruling refusing to accept his untimely brief or to extend the filing period was

---

[1]In his petition for review, Zetino does not challenge the IJ's denial of his application for protection under the United Nations Convention Against Torture. Accordingly, he has waived any challenge to that determination. *See Martinez-Serrano v. INS*, 94 F.3d 1256, 1260 (9th Cir. 1996).

a violation of his due process rights and an abuse of discretion. We find that the BIA's denial of the brief in this instance neither violated Zetino's due process rights nor constituted an abuse of discretion.

Second, Zetino claims the IJ violated his due process rights by failing to develop a factually complete record or advise him of his right to counsel. This argument is without merit and is unsupported by the record.

Third, Zetino claims substantial evidence does not support the BIA's decision that he failed to demonstrate a nexus between the harm he allegedly faces upon return to El Salvador and a protected ground such as race, religion, nationality, membership in a particular social group, or political opinion. Zetino fears return to El Salvador because in 1993 unidentified masked gunmen murdered members of his family motivated by a desire to steal his grandfather's land. Neither that event nor his fear of gangs bears a nexus to a protected ground.

Accordingly, we deny the petition for review.

## II

Due process challenges to immigration proceedings are reviewed *de novo*. *Padilla v. Ashcroft*, 334 F.3d 921, 923 (9th Cir. 2003). We review petitions for review of the BIA's determination that a petitioner does not qualify for asylum or withholding of removal under the highly deferential "substantial evidence" standard. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). Under this standard, the petition for review must be denied if the BIA's determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* The petition for review may be granted only if the evidence presented "was such that a reasonable factfinder would have to conclude that the requisite fear of

persecution existed." *Id.* (citing *NLRB v. Columbian Enamel-ing & Stamping Co.*, 306 U.S. 292, 300 (1939)).

### III

Because Zetino filed his application for asylum after the May 11, 2005, effective date of the REAL ID Act of 2005, we have jurisdiction under Section 242 of the INA, 8 U.S.C. § 1252, as amended by the Act, Pub. L. No. 109-13, Div. B., 119 Stat. 231 (May 11, 2005).

### A

Zetino first challenges the BIA's rejection of his untimely brief and refusal to extend the filing period as an abuse of discretion and a violation of his due process rights. Thus, we are asked to review four challenges: (1) an abuse of discretion challenge to the denial of the motion to accept a late brief; (2) a due process challenge to the denial of the motion to accept a late brief; (3) an abuse of discretion challenge to the denial of the motion to extend the filing period; and (4) a due process challenge to the denial of the motion to extend the filing period.

We limit our analysis to Zetino's challenges to the BIA's denial of his motion to accept a late brief. We construe Zetino's motion, filed two weeks after the filing deadline, as solely a motion to accept an untimely brief. An extension of the filing period was factually impossible because the filing period had already lapsed. In its order, the BIA noted its stated policy that a "request for an extension of time to file a brief must be received at the Board on or before [the] . . . due date." A motion to extend the filing period filed after the filing deadline can only result in the acceptance of an untimely brief. Accordingly, we treat Zetino's "Motion to Accept Late Brief and Motion for Extension of Time" as a motion to accept an untimely brief.

**i**

**[1]** We can see no abuse of discretion in the BIA's decision.**²** The regulation at issue, 8 C.F.R. § 1003.3(c)(1), states, "In its discretion, the Board *may* consider a brief that has been filed out of time." *Id.* (emphasis added). Thus, if a brief has been filed out of time, the BIA *may* consider it in its discretion, but it also *may not* consider it in its discretion. The BIA abuses its discretion when it acts "arbitrarily, irrationally, or contrary to the law." *Singh v. INS*, 213 F.3d 1050, 1052 (9th Cir. 2000) (quoting *Eide-Kahayon v. INS*, 86 F.3d 147, 149 (9th Cir. 1996)); *see also Cerezo v. Mukasey*, 512 F.3d 1163, 1166 (9th Cir. 2008) ("The BIA abuses its discretion when it makes an error of law."). We have held that "[t]he BIA abuses its discretion when it fails to comply with its own regulations." *Iturribarria v. INS*, 321 F.3d 889, 895 (9th Cir. 2003).

**[2]** Zetino filed his brief out of time. The applicable regulation indicates that the BIA *could have* considered his brief in its discretion. *See* 8 C.F.R. § 1003.3(c)(1). The BIA was under no obligation to do so, however, and the BIA certainly did not act arbitrarily, irrationally, or contrary to the law, *Singh*, 213 F.3d at 1052, by exercising its discretion to deny an untimely brief under a regulation indicating that it could— or could not—accept the brief, 8 C.F.R. § 1003.3(c)(1). On this record, there was no abuse of discretion.

**ii**

**[3]** We can see no due process violation in the BIA's decision. "The Fifth Amendment guarantees due process in deportation proceedings." *Campos-Sanchez v. INS*, 164 F.3d 448, 450 (9th Cir. 1999). An alien "must receive a 'full and fair hearing,' in order to meet the requirements of due process."

---

**²**The government argues we lack jurisdiction to review this discretionary decision. We find this argument unpersuasive in light of *Kucana v. Holder*, 130 S. Ct. 827, 831 (2010).

*Id.* A petition for review will only be granted on due process grounds if "(1) the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case, and (2) the alien demonstrates prejudice, which means that the outcome of the proceeding may have been affected by the alleged violation." *Ibarra-Flores v. Gonzales*, 439 F.3d 614, 620-21 (9th Cir. 2006).

**[4]** First, Zetino's proceedings were not so fundamentally unfair that he was prevented from reasonably presenting his case. An alien has been provided with due process when he or she is given an opportunity "to be represented by counsel, prepare an application for . . . relief, and . . . present testimony and other evidence in support of the application." *Vargas-Hernandez v. Gonzales*, 497 F.3d 919, 926-27 (9th Cir. 2007). We have held that a petitioner's due process rights are violated if the BIA refuses to accept a late brief where the alien followed all procedures but the BIA sent the briefing schedule and transcript to an incorrect address. *See Singh*, 362 F.3d 1164, 1168-69 (9th Cir. 2004).

In *Singh*, the petitioner was unable to refute an IJ's adverse credibility finding in front of the BIA because he was never given notice of the briefing schedule. *Id.* at 1168. Here, not only was there no adverse credibility finding, but Zetino received an initial briefing schedule as well as a supplemental briefing schedule affording him a two week extension at his Texas detention facility. His failure to timely file a brief by the date of which he had advance notice was not due to the actions of the BIA, but rather to his six year delay in securing counsel.

While Zetino does not claim ineffective assistance of counsel, we have held that a petitioner's due process rights are not violated even where the failure to file the brief on time is the result of the petitioner's counsel's mistake. *See Rojas-Garcia v. Ashcroft*, 339 F.3d 814, 822 (9th Cir. 2003). Here, Zetino did not secure his counsel until five days after the expiration

of the filing deadline. It was quite impossible for his attorney to timely file his appellate brief. However, even if the errors of his counsel had contributed to the delay, Zetino's due process claim would still fail.

**[5]** Unlike both *Singh* and *Rojas-Garcia*, Zetino cannot point to anyone but himself to explain the untimeliness of his brief. We cannot conclude that by missing the deadline he had successfully extended he somehow deprived himself of due process. To hold to the contrary would mean that when the BIA enforced the previously extended filing deadline known to the petitioner the proceeding became fundamentally unfair. Such a holding would be contrary to existing due process jurisprudence addressing filing deadlines. *See, e.g.*, *United States v. Locke*, 471 U.S. 84, 101 (1985) (holding that a filing deadline under Federal Land Policy and Management Act carrying a penalty of an automatic forfeiture of a mining claim did not violate due process).

**[6]** Nevertheless, we have held an alien's due process rights are violated if the BIA summarily dismisses an appeal for failing to file a brief but the notice of appeal is sufficient to put the BIA on notice of the relevant issues on appeal. *See Garcia-Cortez v. Ashcroft*, 366 F.3d 749, 753-54 (9th Cir. 2004). In his Notice of Appeal, Zetino made a coherent argument asking the BIA to reverse the IJ's determination. He cited specific evidence regarding his fear of his family's murderers as well as his fear of gangs. However, the BIA did not summarily dismiss Zetino's appeal when his brief was untimely. Nor did the BIA summarily adopt the decision of the IJ instead of addressing each of Zetino's claims. In its decision, the BIA properly articulated Zetino's two fears: "He fears that he could be killed by the eleven unidentified masked gunmen who fatally shot his aunt, uncle, and at least three cousins in 1993 and who remain at large. He also fears members of gangs, who could attempt to recruit him." The BIA considered his arguments in turn, and affirmed the IJ's decision, holding that Zetino failed to establish a nexus

between his fears and a protected ground. Thus, it did not prevent Zetino from reasonably presenting his case.

**[7]** Second, even if rejection of Zetino's brief could be considered a violation of his rights, he cannot show prejudice because the BIA considered all of the facts presented and applied them to the law. Zetino's articulation of his two fears could not have changed to such a degree between his Notice of Appeal and his brief that the BIA's decision would have changed. The BIA's review, and its rejection of Zetino's untimely brief, did not run afoul of the Fifth Amendment's Due Process Clause.

**B**

**[8]** Zetino's second argument on appeal is that the IJ violated his due process rights by failing to develop a factually complete record or advise him of his right to counsel. This argument is without merit.

The same standard applies to both this challenge and Zetino's due process challenge to the BIA's rejection of his untimely brief. *See supra* at Section III(A)(ii). Zetino was entitled to a full and fair hearing. *See Campos-Sanchez*, 164 F.3d at 450. Zetino was not prevented from reasonably presenting his case, nor were the proceedings before the IJ fundamentally unfair.

Zetino was advised of his right to counsel at his first appearance before the IJ on May 31, 2001. The IJ stated,

> [N]ow let me explain to you the rights that you will have in these hearings. First and foremost of those rights is the right to be represented. The Immigration Service today is represented by an attorney. You have the same right. You may be represented by an attorney or a representative who's been authorized and qualified to represent people before the Immi-

gration Court . . . . If you want to have an attorney or representative represent you in these proceedings it must be at no expense to the Government. That means it is going to be your obligation to contact that individual.

In the colloquy between Zetino and the IJ, the IJ specifically advised him of his right to counsel and confirmed that he was provided with a list of free legal services. The IJ stated, "I'm going to show you a document. That document is called the legal aid list, and you . . . should have gotten a copy of this document when you got notice of today's hearing. Did you . . . receive a copy of this document that I'm showing you?" Zetino answered, "Yes." Zetino even sought a continuance to obtain counsel. Zetino had almost six years between his first appearance and his final merits hearing to obtain counsel.

At the final hearing, Zetino called witnesses but chose not to question them. Zetino argues that he was not aware of his right to question his witnesses. However, the IJ specifically explained this right to him. When Zetino testified for himself, and when he chose not to question his witnesses, the IJ sufficiently developed the record, soliciting responses to several questions. First he asked, "Why do you fear returning to the country of El Salvador?" Then, "Any other reason why you fear [sic]?" Finally, "Do you know why they are killed or what the motivation was [sic]?"

The lawyer for the Department of Homeland Security also developed the record, asking Zetino and his family members numerous questions. The attorney began, "Why do you think they will harm you in particular?" Then, "Have you ever had any family members killed in El Salvador?" "[D]o you know who killed them?" "Do you know why this murder took place or what the motive was?" "[W]ere you hurt at all while you were in El Salvador?" Finally, "Do you think your son will be harmed if he returned to El Salvador?"

The IJ advised Zetino of his procedural rights and developed a thorough factual record. As a result, we find that the proceeding was not so fundamentally unfair that Zetino was prevented from reasonably presenting his case. His due process rights were not violated.

## C

Finally, Zetino argues that substantial evidence does not support the BIA's decision affirming the IJ's denial of his applications for asylum and withholding of removal. Under the substantial evidence standard, the petition for review must be denied if the BIA's determination was "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Elias-Zacarias*, 502 U.S. at 481. Zetino bears the burden of proving that he is eligible for asylum or withholding of removal. *See* 8 C.F.R. §§ 1208.13, 1208.16; *Berroteran-Melendez v. INS*, 955 F.2d 1251, 1255-56 (9th Cir. 1992).

To be eligible for asylum, Zetino must demonstrate that he can qualify as a "refugee," meaning he is unable or unwilling to return to his country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). To be eligible for withholding of removal, Zetino must demonstrate that his "life or freedom would be threatened in [his home] country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1231(b)(3). The REAL ID Act of 2005 places an additional burden on Zetino to demonstrate that one of the five protected grounds will be at least one central reason for his persecution. *See id.* § 1158(b)(1)(B)(i).

Zetino testified that he was fearful of returning to El Salvador because, in 1993, bandits attempting to steal his grandfather's farm had murdered his family members. Zetino did not

present evidence that the bandits targeted his family on account of a protected ground such as their race, religion, nationality, membership in a particular social group, or political opinions. Rather, he testified that the farm was on fertile land, and thus valuable. Zetino implied that the only motivation for the murders was the land itself. He testified that the attackers "were insisting on the lands and [his] grandfather did not want to get rid of the land." Zetino also testified that he was afraid of gang violence because he had tattoos that gang members might mistake as a sign of membership in a rival gang.

[9] An alien's desire to be free from harassment by criminals motivated by theft or random violence by gang members bears no nexus to a protected ground. *See id.* §§ 1231(b)(3), 1101(a)(42); *Gormley v. Ashcroft*, 364 F.3d 1172, 1177 (9th Cir. 2004) (holding that random criminal acts bore no nexus to a protected ground). Accordingly, the BIA properly ruled that Zetino did not meet his burden of proving that the potential harm he would suffer in El Salvador was "on account of" a protected ground such as "race, religion, nationality, membership in a particular social group, or political opinion." *Gormley*, 364 F.3d at 1176. Because the BIA's determination is supported by reasonable, substantial, and probative evidence in the record considered as a whole, the petition for review is denied.

## IV

There was no abuse of discretion, Zetino's due process rights were not violated, and substantial evidence supports the BIA's decision that Zetino did not demonstrate a nexus between the harm he fears and a protected ground. The petition for review is denied.

**PETITION DENIED.**