NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

AUG 19 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| KENIA LISSETH ABARCA-DE POSADA; et al., <br><br> Petitioners, <br><br> v. <br><br> WILLIAM P. BARR, Attorney General, <br><br> Respondent. | No.  18-71106 <br><br> Agency Nos.   A208-271-842 <br> A208-271-843 <br> A208-271-844 <br><br> MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted August 13, 2020**
San Francisco, California

Before:  HAWKINS and CHRISTEN, Circuit Judges, and GRITZNER,*** District Judge.

Kenia Lisseth Abarca de Posada and her two children—Keyli Nicole Chicas

Abarca and Emily Sarai Posada Abarca—petition for review of the Board of

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*      The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

\*\*\*      The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa, sitting by designation.

Immigration Appeals' denial of their appeal of the Immigration Judge's order denying asylum, withholding of removal, and relief under the Convention Against Torture. We have jurisdiction pursuant to 8 U.S.C. § 1252(a), and we deny the petition.

Petitioners—citizens of El Salvador—claimed asylum based on alleged persecution by gangs in El Salvador on account of their membership in several particular social groups: individuals performing managerial or secretarial roles at local businesses in El Salvador, family members of Roberto Posada (Abarca de Posada's husband and Emily and Keyli's father), family members of Keyli Chicas Abarca, and, specifically for Keyli, Salvadoran teenage girls attending school. Petitioners argue that the BIA erred in affirming the IJ's finding that there was no nexus between their membership in any proposed particular social group and the threats they faced from gangs in El Salvador.

Substantial evidence supports the BIA's decision. *See Aguilar Fermin v. Barr*, 958 F.3d 887, 891-92 (9th Cir. 2020), *petition for cert. filed* (U.S. July 22, 2020) (No. 20-53). "To establish asylum eligibility, an applicant must show that he is unable or unwilling to return to his country of nationality 'because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Madrigal v. Holder*, 716 F.3d 499, 503 (9th Cir. 2013) (quoting 8 U.S.C. §

2

1101(a)(42)(A)).  Abarca de Posada testified before the IJ that gang members attempted to extort all company employees that might have access to money, such as bus drivers and dispatchers, not specifically those in managerial or secretarial roles.  She also testified that the gangs were motivated by a desire for money, not because of where she worked, and that all companies paid the gangs.  The news reports Petitioners submitted as documentation regarding the murders of two of Abarca de Posada's coworkers indicate that they were murdered for traveling into the territory of a rival gang, not because of their jobs.  Further, Keyli stated in her declaration that the classmate/gang member who harassed her told her she was beautiful and that he wanted her to be his girlfriend, which supports the conclusion that he harassed her for personal reasons, not on account of a protected ground.  Petitioners demonstrated exposure to gang threats and harassment, but substantial evidence supports the BIA's finding that the gangs did not target them on account of their membership in a proposed particular social group.  *See Zetino v. Holder*, 622 F.3d 1007, 1016 (9th Cir. 2010) ("An alien's desire to be free from harassment by criminals motivated by theft or random violence by gang members bears no nexus to a protected ground." (citing 8 U.S.C. §§ 1231(b)(3), 1101(a)(42); *Gormley v. Ashcroft,* 364 F.3d 1172, 1177 (9th Cir. 2004))).

Petitioners contend the BIA and IJ failed to apply the appropriate nexus standard, as set forth in *Barajas-Romero v. Lynch*, 846 F.3d 351 (9th Cir. 2017), in

evaluating their withholding of removal claims. *Barajas-Romero* held that the BIA erred in requiring a petitioner in a withholding of removal claim to prove their protected characteristic or membership in a particular social group was "one central reason" they faced persecution, rather than merely "a reason." *Barajas-Romero*, 846 F.3d at 360. The court explained that in *Zetino v. Holder*, "[w]e drew no distinction between the 'one central reason' phrase in the asylum statute and the 'a reason' phrase in the withholding statute, because there was no nexus at all between the feared persecution and political opinion." *See id.* (citing *Zetino*, 622 F.3d at 1016). The BIA cited the appropriate "a reason" nexus standard, and its finding that there was no nexus between Petitioners' proposed social groups and the threats they received from gang members is consistent with the application of that standard.

Substantial evidence supports the BIA's finding that Petitioners failed to demonstrate they would more likely than not be subject to torture if they returned to El Salvador. *See Ling Huang v. Holder*, 744 F.3d 1149, 1152 (9th Cir. 2014). Abarca de Posada testified her husband relocated within El Salvador without being tortured, and that after an incident in which he entered a neighborhood controlled by a rival gang and was stopped and searched by gang members, he has worked as a mechanic from home without incident. Evidence in the record also shows police in El Salvador investigate claims of gang violence and threats, supporting the

4

finding that the authorities would not be willfully blind to torture. *See Zheng v. Ashcroft*, 332 F.3d 1186, 1196 (9th Cir. 2003). The BIA correctly concluded that the inability of a country to prevent general criminal violence does not support a CAT claim. *See Garcia-Milian v. Holder*, 755 F.3d 1026, 1034 (9th Cir. 2014) ("Nor does evidence that a government has been generally ineffective in preventing or investigating criminal activities raise an inference that public officials are likely to acquiesce in torture, absent evidence of corruption or other inability or unwillingness to oppose criminal organizations.").

Petitioners failed to meet their burden of establishing eligibility for asylum, withholding of removal, or CAT relief.

**PETITION DENIED**