**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| PATRICIA MARISOL HERNANDEZ-GALAND, AKA Celena Hernandez-Gomez; M. E. H.-H., AKA M. M. H.-H., *Petitioners*, <br><br> v. <br><br> MERRICK B. GARLAND, Attorney General, *Respondent.* | Nos. 17-70538 <br> 19-70198 <br><br> Agency Nos. <br> A208-273-506 <br> A208-273-507 <br><br> OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 1, 2021
San Francisco, California

Filed May 12, 2021

Before: Kim McLane Wardlaw and Marsha S. Berzon,
Circuit Judges, and Edward M. Chen,[*] District Judge.

Opinion by Judge Chen

---

[*] The Honorable Edward M. Chen, United States District Judge for the Northern District of California, sitting by designation.

**SUMMARY**[**]

**Immigration**

The panel granted a petition for review of a decision of the Board of Immigration Appeals affirming the denial of a motion to reopen filed by Patricia Marisol Hernandez-Galand and her minor child, and remanded, holding that exceptional circumstances warranted reopening of petitioners' in absentia removal orders.

Petitioners, natives and citizens of El Salvador, appeared pro se at their initial hearing.  An Immigration Judge ("IJ") orally informed Ms. Hernandez that her next hearing date was July 12, 2016, and gave her a written notice with a hearing date of "07/12/2016."   Due to chronic memory problems from a childhood head injury, Ms. Hernandez did not remember the date the IJ had told her, and because she cannot read, she asked family members to read the notice. The family interpreted the date as December 7, 2016, based on how numerical dates are typically written in Latin America, with the day appearing before the month.

When Ms. Hernandez did not appear at the July 12, 2016, hearing, the IJ ordered petitioners removed in absentia. Petitioners timely filed a motion to reopen under 8 U.S.C. § 1229a(b)(5)(C)(i), contending that that exceptional circumstances warranted reopening.   The IJ denied the motion, and the BIA affirmed.

---

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

First, the panel considered the circumstances that caused Ms. Hernandez's failure to appear. The panel explained that Ms. Hernandez non-conclusory and unrefuted testimony in her sworn declaration about her memory problems was not inherently unbelievable, and there was no evidence in the record to contradict it. Thus, the panel concluded that the BIA erred to the extent it disregarded this aspect of Ms. Hernandez's declaration simply because it lacked corroboration, and the panel credited Ms. Hernandez's statements regarding her memory problems. The panel further concluded that the facts regarding Ms. Hernandez's inability to read and her family's misinterpretation of the hearing date were not disputed by the government or inherently believable, and thus must be credited. The panel therefore concluded that Ms. Hernandez's failure to appear was due not to her choices or a lack of diligence, but to circumstances beyond her control.

The panel further explained that the BIA abused its discretion by concluding that Ms. Hernandez should have confirmed her hearing date through the immigration court's automated system, noting that the only evidence suggesting that she was advised of the system were the written instructions she could not read, and explaining that she and her family had no reason to suspect that the hearing was not on December 7, 2016.

Next, the panel concluded that the BIA erred in not addressing whether Ms. Hernandez had any motive for failing to appear, and whether petitioners' in absentia removal orders would cause unconscionable results. Since the BIA made no findings as to either, there were no findings entitled to substantial evidence review, and the panel concluded that both factors weighed in favor of reopening. First, the panel concluded that there was no basis to infer that

Ms. Hernandez was attempting to evade or delay her proceedings.

Second, the panel concluded that imposing the removal orders here would present an unconscionable result, explaining that the court has held that such results occur where a petitioner who demonstrated a strong likelihood of relief is removed in absentia. The panel recognized that Ms. Hernandez had not yet established a likelihood of success similar to that made in the relevant precedent, but concluded that her claims to asylum and related relief were not baseless. The panel observed that a likelihood of prevailing is not a *sine qua non* of exceptional circumstances; the court has made such a finding without a showing of the strength of the petitioner's case on the merits, and the probability of relief is but one factor in the totality of circumstances to be considered. The panel concluded that Ms. Hernandez had made a compelling showing on the other factors.

Lastly, the panel explained that the IJ also entered an in absentia order against Ms. Hernandez's minor child ("M.E."), who was four years old at the time, and whose presence had been waived for the hearing at which he was ordered removed. Noting that an asylum officer had previously determined that M.E. had a credible fear of persecution on account of his family social group, the panel concluded that Ms. Hernandez's failure to appear also prejudiced M.E.'s opportunity for relief from removal.

## COUNSEL

Stephen B. Kang (argued), ACLU Foundation Immigrants' Rights Project, San Francisco, California; Ahilan T. Arulanantham, ACLU Foundation of Southern California, Los Angeles, California; Matt Adams, Northwest Immigrant Rights Project, Seattle, Washington; Talia Inlender and Kristen Jackson, Public Counsel Law Center, Los Angeles, California; Kristin Macleod-Ball, American Immigration Council, Brookline, Massachusetts; Karolina J. Walters, American Immigration Council, Washington, D.C.; for Petitioners.

Linda Y. Cheng (argued), Trial Attorney; Anthony P. Nicastro, Assistant Director; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

## OPINION

CHEN, District Judge:

This case concerns in absentia removal orders entered against a mother and her minor child as a consequence of the mother's failure to appear in immigration court. We hold that there are exceptional circumstances in this case that warrant reopening. Therefore, we grant the petition for review and remand for further proceedings.

I

Petitioners Patricia Marisol Hernandez-Galand ("Ms. Hernandez") and her minor child, M.E.H.H.[1] ("M.E."), are natives and citizens of El Salvador. They entered the United States on June 9, 2015. Petitioners were served with notices to appear in immigration court, charging them as removable for lacking valid entry documents.

In a written notice of hearing, the immigration court set petitioners' removal hearing date with the Immigration Judge ("IJ") for "Apr 22, 2016." Ms. Hernandez was also reminded of this hearing date during one of her mandatory appointments for her alternatives-to-detention program.

Ms. Hernandez and M.E. appeared pro se at the April 22, 2016 hearing and were given additional time to look for an attorney. The IJ set their next hearing for July 12, 2016, waiving M.E's presence at that hearing. The IJ orally informed Ms. Hernandez of her new hearing date and provided her with written notice of hearing.

This sequence set into motion a chain of events that ultimately caused Ms. Hernandez to miss her hearing on July 12, 2016. Ms. Hernandez suffers from chronic memory problems that stem from a childhood head injury, so she did not remember what the IJ had told her orally about her next hearing date. For this reason, she relied on the information in the notice of hearing. But because Ms. Hernandez cannot read, she asked family members to read the notice of hearing for her. However, this new notice of hearing, unlike the first

---

[1] Although the minor petitioner's initials appear as "M.M.H.H." in the administrative record, petitioners' counsel indicates that the initials for his true name are "M.E.H.H."

one, only provided a numerical date for the hearing, "07/12/2016." Ms. Hernandez's family interpreted this notation as December 7, 2016, based on how numerical dates in Latin America (and most of the rest of the world) are typically written, with the day appearing before the month.

Believing that she was not required to appear in immigration court until December 7, 2016, Ms. Hernandez did not appear on July 12, 2016. The IJ consequently ordered Ms. Hernandez and M.E. removed in absentia.

About two weeks later, petitioners filed a motion to reopen. In the motion, they contended that exceptional circumstances warranted reopening proceedings because 1) Ms. Hernandez's memory problems rendered her unable to remember the July 12, 2016 hearing date orally stated to her; 2) she is a "non-reader" and had relied on family to tell her what the various notices from the immigration court said; and 3) because of the differences in the way dates are written by Spanish-speakers in El Salvador from the dominant format in this country, her family incorrectly told her the hearing date was December 7, 2016. The motion to reopen was supported by Ms. Hernandez's declaration, and her I-589 application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").

The IJ denied the motion to reopen, and the Board of Immigration Appeals ("BIA") affirmed. The BIA noted that Ms. Hernandez had failed to provide any evidence to corroborate her claim in her declaration that she suffers from memory problems. Additionally, the BIA affirmed the IJ's finding that Ms. Hernandez could have verified her hearing date through the immigration court's automated system. Based on these considerations, the BIA concluded that Ms. Hernandez had failed to establish exceptional

circumstances warranting reopening petitioners' in absentia removal orders.

## II.

## A.

Our jurisdiction is governed by 8 U.SC. § 1252. We review the BIA's denial of a motion to reopen for abuse of discretion. *Perez v. Mukasey*, 516 F.3d 770, 773 (9th Cir. 2008). "The BIA abuses its discretion when it acts arbitrarily, irrationally, or contrary to the law, and when it fails to provide a reasoned explanation for its actions." *Tadevosyan v. Holder*, 743 F.3d 1250, 1252–53 (9th Cir. 2014) (citation and internal quotation marks omitted).

Under the Immigration and Nationality Act ("INA"), a properly entered in absentia removal order "may be rescinded only . . . upon a motion to reopen filed within 180 days after the date of the order of removal if the alien demonstrates that the failure to appear was because of exceptional circumstances." 8 U.S.C. § 1229a(b)(5)(C)(i). "The term 'exceptional circumstances' refers to exceptional circumstances . . . beyond the control of the alien," "such as battery or extreme cruelty to the alien or any child or parent of the alien, serious illness of the alien, or serious illness or death of the spouse, child, or parent of the alien, but not including less compelling circumstances." *Id*. § 1229a(e)(1). Although the INA's enumerated examples are not an exhaustive list, exceptional circumstances require a showing of a "similarly severe impediment." *Arredondo v. Lynch*, 824 F.3d 801, 805 (9th Cir. 2016) (quoting *Singh-*

*Bhathal v. INS*, 170 F.3d 943, 947 (9th Cir. 1999)[2]).  Beyond that, the statutory language "is not imbued with any additional meaning." *Singh v. INS*, 213 F.3d 1050, 1052 (9th Cir. 2000).  Although the legislative history provides little specificity, "[t]he conferees expect that in determining whether an alien's failure to appear was justifiable, the Attorney General will look at the totality of the circumstances to determine whether the alien could not reasonably have been expected to appear."  Iris Gomez, *The Consequences of Nonappearance:  Interpreting New Section 242B of the Immigration and Nationality Act*, 30 San Diego L. Rev. 75, 151 (1993) (citing H.R. Rep. No. 955, 101st Cong., 2d Sess. 132 (1990)).  As a result, we look to the "particularized facts," *Singh*, 213 F.3d at 1052, and the "totality of the circumstance" of each case, *Celis-Castellano v. Ashcroft*, 298 F.3d 888, 892 (9th Cir. 2002), in determining whether the petitioner has established exceptional circumstances.

In considering the totality of the circumstances, the BIA must first consider whether "petitioners did all they reasonably could to have their cases heard promptly," *Lo v. Ashcroft*, 341 F.3d 934, 938 (9th Cir. 2003), and whether "through no fault of their own, [petitioners] have never had their day in court to present their claims," *Romani v. INS*, 146 F.3d 737, 739 (9th Cir. 1998).  Other relevant considerations, in addition to the severity of the impediment to appearance, include whether the petitioner had a motive

---

**2** *Singh-Bhathal* and our other published decisions considered whether there were exceptional circumstances as then required by 8 U.S.C. § 1252b(c)(3)(A) (1994).  That section was deleted by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, § 304(a), 110 Stat. 3009–87 (1996), and recodified in essentially the same language at 8 U.S.C. § 1229a(b)(5)(C) (2002).

for failing to appear (such as avoiding a removal order on the merits) and whether the in absentia removal order would cause unconscionable results. *See Chete Juarez v. Ashcroft*, 376 F.3d 944, 948 (9th Cir. 2004); *Singh v. INS*, 295 F.3d 1037, 1039–40 (9th Cir. 2002).

B.

Petitioners contend that exceptional circumstances warrant the reopening of their proceedings. We agree.

We first consider the circumstances that caused Ms. Hernandez's failure to appear. In Ms. Hernandez's sworn declaration, she explained that her confusion over the hearing date was due in part to her longstanding, trauma-inflicted memory problems. She provided specific details about her condition, attesting that she had been kicked in the head by a horse as a child and as a result had suffered from memory problems ever since. This non-conclusory and unrefuted testimony is not inherently unbelievable, and there is no evidence in the record to contradict her statements. Accordingly, to the extent the BIA disregarded this aspect of Ms. Hernandez's declaration simply because it lacked corroboration, it erred. *See Agonafer v. Sessions*, 859 F.3d 1198, 1203 (9th Cir. 2017) ("In considering a motion to reopen, the BIA must accept as true the facts asserted by the petitioner, unless they are 'inherently unbelievable.'" (quoting *Limsico v. INS*, 951 F.2d 210, 213 (9th Cir. 1991)); *Arredondo*, 824 F.3d at 806 (BIA erred by disregarding the petitioner's affidavit, as it was not inherently unbelievable or incredible); *Monjaraz-Munoz v. INS*, 327 F.3d 892, 897 (9th Cir. 2003) (BIA cited no evidence that can support a finding that petitioner's version of events was not credible). We therefore credit Ms. Hernandez's statements regarding her memory problems.

In addition to Ms. Hernandez's memory problems that caused her to forget her hearing date, she also could not read her notice of hearing, as she was not literate.  This put a premium on Ms. Hernandez's reliance on family members to interpret the notice of hearing for her.  Their mistake in interpretating the notice date was reasonable and believable, given the differences in how dates are written numerically in Latin America and in the United States.  These facts regarding Ms. Hernandez's inability to read and her family's misinterpretation of the notice of hearing are also not disputed by the government or inherently unbelievable, and thus must be credited.  *See Agonafer*, 859 F.3d at 1203.

Despite these impediments created by her memory problems and inability to read, Ms. Hernandez used her best efforts to understand and comply with the immigration court's notice of hearing.  Her mistake over the hearing date and subsequent failure to appear were due not to her choices or a lack of diligence, but to circumstances beyond her control.  *See Lo*, 341 F.3d at 938 (concluding that counsel's secretary's misstatement about the hearing date was an exceptional circumstance, where "petitioners did all they reasonably could to have their cases heard promptly"); *Romani*, 146 F.3d at 739 (petitioners were misdirected away from the proper courtroom by their attorney's assistant and thus missed their day in court "through no fault of their own"); *cf. Arredondo*, 842 F.3d at 806 (no exceptional circumstances where petitioner had poorly planned her drive to the court and prioritized her car repairs over her court attendance); *Singh-Bhathal*, 170 F.3d at 946 (no exceptional circumstances where the petitioner "chose to heed the consultant's advice [not to appear] and disregard the written notice provided by the [immigration court]"); *United States v. Dekermenjian*, 508 F.2d 812, 814 (9th Cir. 1974) (a petitioner cannot complain of an order in absentia if he or

she "voluntarily chooses" not to attend a deportation hearing).

According to the BIA, Ms. Hernandez's situation did not amount to an exceptional circumstance because she should have confirmed her hearing date through the immigration court's automated system. However, the only evidence in the record to suggest that Ms. Hernandez was ever advised of this automated system are the written instructions contained in the notice of hearing, which Ms. Hernandez could not read. Further, Ms. Hernandez and her family had no reason to suspect that her hearing was not on December 7, 2016 given the reasonable understanding of the numerical date, and thus had no reason to confirm the hearing date through other sources. *Cf. Singh*, 295 F.3d at 1040 (petitioner could have easily misunderstood the time of the hearing). Because the BIA relied on findings regarding Ms. Hernandez's access to the automated system that lack support in the record, its reliance on that access as a basis for finding an absence of exceptional circumstances was an abuse of discretion.[3] *See Calderon-Rodriguez v. Sessions*, 878 F.3d 1179, 1183 (9th Cir. 2018) (holding that the BIA abused its discretion by relying on "critical factual findings" whose inferences could not be supported by the record).

We further consider whether Ms. Hernandez had any motive for failing to appear, and whether petitioners' in absentia removal orders would cause unconscionable results. *See Chete Juarez*, 376 F.3d at 948–49; *Lo*, 341 F.3d at 938–39; *Singh*, 295 F.3d at 1039–40. The BIA erred in not addressing either factor. And since it made no finding as to

---

[3] Contrary to the government's contention, petitioners preserved their challenge to the BIA's findings regarding the automated system by raising it in the opening brief.

either, there are no findings entitled to substantial evidence review in this appeal. Having reviewed the record, we conclude both factors weigh in favor of reopening these proceedings.

First, there is no basis to infer that Ms. Hernandez was attempting to evade or delay her proceedings in immigration court. Prior to the July 12, 2016 hearing, Ms. Hernandez was diligent in making all appearances. She appeared for her prior April 22, 2016 hearing pro se, and she also attended her appointments with the alternatives-to-detention program. *See Chete Juarez*, 376 F.3d at 948 (exceptional circumstances established where petitioner previously appeared for every scheduled hearing); *Singh*, 295 F.3d at 1040 (petitioner "diligently appeared for all of his previous hearings"). Additionally, Ms. Hernandez moved swiftly to reopen proceedings, filing the motion to reopen a mere sixteen days after the in absentia removal orders were entered. *Cf. Matter of B-A-S-*, 22 I. & N. Dec. 57, 59 (BIA 1998) (non-citizen's delay in filing the motion to reopen until more than three months after the in absentia removal hearing demonstrated a "lack of diligence . . . that undercuts" the claim of exceptional circumstances). The government has not identified any advantage she would have gained by evading the July 12, 2016 hearing and then moving sixteen days late to have such a hearing.

Second, imposing the in absentia removal orders under these circumstances presents an unconscionable result. We have held that an in absentia removal order would lead to an unconscionable result where a petitioner who demonstrated a strong likelihood of relief is removed. *See Chete Juarez*, 376 F.3d at 948–49; *Singh*, 295 F.3d at 1040. We recognize that Ms. Hernandez has not yet established a likelihood of success similar to that made in *Singh*, where the petitioner

had a "valid" claim for adjustment of status through his marriage to an American citizen, 295 F.3d at 1040, or *Chete Juarez*, where the record showed that the petitioner likely qualified for suspension from deportation, 376 F.3d at 949. Here, Ms. Hernandez's materials in support of her motion to reopen indicated that she feared general crime and violence in El Salvador, and typically such fear alone is not a basis on which relief will be granted. *See Zetino v. Holder*, 622 F.3d 1007, 1016 (9th Cir. 2010) (stating that in the context of asylum or withholding of removal, an applicant's "desire to be free from harassment by criminals motivated by theft or random violence by gang members bears no nexus to a protected ground"); *Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1152 (9th Cir. 2010) (concluding that "generalized evidence of violence and crime . . . is insufficient to meet [the CAT] standard").

Yet Ms. Hernandez's claims are not baseless. In a motion to reopen based on changed country conditions, petitioners have supplemented their applications for asylum and related relief. According to petitioners' briefing in this petition for review, their more recent motion to reopen included evidence that five of Ms. Hernandez's family members were kidnapped in El Salvador in November 2018. Although our review is generally confined to the record before the BIA, the subsequent motion to reopen is considered not to support a substantive claim on appeal, but for the purpose of determining the potential harm were reopening denied. *See Dent v. Holder*, 627 F.3d 365, 371 (9th Cir. 2010) (noting that although our review is generally confined to the administrative record before the BIA, this rule should not be interpreted to the point of producing absurd or unjust results).

Additionally, a likelihood of prevailing in removal proceedings is not a *sine qua non* of "exceptional circumstances" under § 1229a(b)(5)(c)(i). We have made such a finding without a showing of the strength of the petitioner's case on the merits. *See Monjaraz-Munoz*, 327 F.3d at 898; *Singh*, 213 F.3d at 1054; *Romani*, 146 F.3d at 739. The probability of relief upon reopening is but one factor in the totality of the circumstances which inform the assessment of exceptional circumstances. A strong showing on some factors may lessen the requisite showing on others. *Cf. Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011) (factors for a stay of removal are considered along a flexible continuum, where the factors "are balanced, so that a stronger showing of one . . . may offset a weaker showing of another"). In this case, Ms. Hernandez has made a compelling showing on the other factors.

Lastly, Ms. Hernandez's opportunity to present her case is not the only consideration at stake here. The IJ also entered an in absentia removal order against Ms. Hernandez's minor child, M.E., who was four years old at the time, and whose presence at the July 12, 2016 hearing had been waived. According to the credible fear findings in the administrative record, an asylum officer previously determined that M.E. had a credible fear of persecution on account of his family social group. *See Rios v. Lynch*, 807 F.3d 1123, 1128 (9th Cir. 2015) (explaining that "family remains the quintessential particular social group."). Thus, Ms. Hernandez's failure to appear at the hearing prejudiced M.E.'s opportunity for relief from removal as well.

III.

In light of the totality of the circumstances, we conclude that Ms. Hernandez has made a sufficient showing of exceptional circumstances warranting relief under

§ 1229a(b)(5)(C)(i), and the BIA abused its discretion in denying her request to reopen the case. Accordingly, we **GRANT** the petition for review and **REMAND** to the BIA for further proceedings consistent with this opinion.[4]

---

[4] In view of this disposition, we need not reach the remaining contentions raised in the petitions for review. Accordingly, all pending motions are **DENIED** as moot.