**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JUAN ANTONIO PEREZ,

*Petitioner,*

v.

MICHAEL B. MUKASEY, Attorney
General,

*Respondent.*

No. 04-73029

Agency No.
A95-302-681

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
November 6, 2007—Pasadena, California

Filed February 14, 2008

Before: Betty B. Fletcher, Stephen Reinhardt, and
Pamela Ann Rymer, Circuit Judges.

Opinion by Judge Reinhardt;
Dissent by Judge Rymer

**COUNSEL**

Evan L. Murri, Esq., Law Offices of Evan L. Murri, San Gabriel, California, for the petitioner.

Peter D. Keisler, Esq., Michelle Gordon Latour, Esq., P. Michael Truman, Esq., Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., for the respondent.

**OPINION**

REINHARDT, Circuit Judge:

On March 12, 2003, Petitioner Juan Antonio Perez was ordered removed in absentia. The immigration judge ("IJ") denied his motion to reopen the immigration proceedings, a decision that was summarily affirmed by the Board of Immigration Appeals ("BIA"). Perez argues on appeal that the agency erred in entering an in absentia removal order against him—and then denying his motion to reopen for lack of exceptional circumstances—because he did not fail to appear at his removal hearing. Although Perez was late to the hearing

due to his car's mechanical failure, he arrived while the IJ was still in the courtroom. We agree that under these circumstances, the agency erred in finding that Perez failed to appear. We have jurisdiction pursuant to 8 U.S.C. § 1252 and grant the petition for review.

## I.    Factual and Procedural Background

Perez, a thirty-year-old native and citizen of Mexico, entered the United States without inspection on June 12, 2000. He filed an application for asylum and withholding of removal on May 13, 2002. On July 1, 2002, the former Immigration and Naturalization Service ("INS") initiated removal proceedings against him.[1] Perez was personally served with notice that he was to appear for a removal hearing scheduled for December 4, 2002 at 9:00 AM. The notice contained a warning that failure to appear at the hearing, absent "exceptional circumstances[,]" could result in a removal order being entered in absentia. He appeared promptly at his scheduled hearing. At that time, Perez was served with notice of his next scheduled hearing, set for March 12, 2003 at 9:00 AM. This notice again contained a warning that failure to appear, absent "exceptional circumstances[,]" could result in a removal order being entered in absentia.

On the morning of March 12, 2003, Perez was making his way to the courthouse when his car overheated in the middle of rush hour traffic. He pulled the car off of the freeway and waited for it to cool. When he restarted it and tried to drive on the surface streets, the car overheated again. He left his car and found a bus that would get him to the courthouse. As a result of his car's mechanical failure, Perez arrived at the courthouse approximately two hours after his scheduled hearing time.

---

[1]On March 1, 2003, the INS ceased to exist and its functions were transferred to the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, § 471, 116 Stat. 2135.

When Perez entered the courtroom, around 11:00 AM, the IJ was still on the bench. Perez approached the IJ's assistant and handed her his notice of the removal hearing. At that moment, the IJ stood and left the courtroom. The assistant informed Perez that "[I]t is too late. The Judge is done for the day." The IJ issued a decision that same day ordering Perez removed in absentia.

Perez, proceeding pro se, filed a timely motion to reopen. The IJ denied the motion reasoning that Perez "failed to show that his failure to appear was due to exceptional circumstances" as required by 8 U.S.C. § 1229a(b)(5)(C). The BIA summarily affirmed the IJ's decision. Perez, now represented by counsel, seeks review of the BIA's adverse decision.

## II.   Standard of Review

Where, as here, the BIA uses its summary affirmance procedure, "the IJ's decision becomes the BIA's decision and we evaluate the IJ's decision as we would that of the Board." *Lanza v. Ashcroft*, 389 F.3d 917, 925 (9th Cir. 2004) (internal citation and quotation marks omitted). Although the BIA's summary affirmance " 'only means that the BIA deemed any errors by the IJ to be harmless,' as a practical matter, we may review only the reasoning presented by the IJ." *Reyes-Reyes v. Ashcroft*, 384 F.3d 782, 786 (9th Cir. 2004) (internal citations omitted).

We review the denial of a motion to reopen for abuse of discretion. *See Movsisian v. Ashcroft*, 395 F.3d 1095, 1098 (9th Cir. 2005); *Singh v. INS*, 213 F.3d 1050, 1052 (9th Cir. 2000). The agency's decision is only reversed if it is " 'arbitrary, irrational, or contrary to law.' " *Singh v. INS*, 295 F.3d 1037, 1039 (9th Cir. 2002) (quoting *Ahwazi v. INS*, 751 F.2d 1120, 1122 (9th Cir. 1985)).

## III.   Discussion

**[1]** The Immigration and Nationality Act ("INA") provides that an alien who fails to appear at an immigration proceeding

"shall be ordered removed in absentia if the Service establishes by clear, unequivocal, and convincing evidence that . . . written notice was . . . provided and that the alien is removable . . . ." 8 U.S.C. § 1229a(b)(5)(A). An in absentia removal order "may be rescinded only upon a motion to reopen filed within 180 days after the date of the order of removal if the alien demonstrates that the failure to appear was because of exceptional circumstances (as defined in subsection (e)(1) of this section)." 8 U.S.C. § 1229a(b)(5)(C)(i). "Exceptional circumstances" are defined as "circumstances (such as battery or extreme cruelty to the alien or any child or parent of the alien, serious illness of the alien, or serious illness or death of the spouse, child, or parent of the alien, but not including less compelling circumstances) beyond the control of the alien." 8 U.S.C. § 1229a(e)(1).

**[2]** Under the INA's statutory framework, then, a failure to appear is a prerequisite for the entry of an in absentia removal order. If an alien appears at his hearing, an in absentia removal order may not be entered against him and, it follows, the statute's provisions requiring an alien to demonstrate exceptional circumstances in order to reopen proceedings are inapplicable. *See, e.g.*, *Jerezano v. INS*, 169 F.3d 613, 615 (9th Cir. 1999); *Romani v. INS*, 146 F.3d 737, 738-39 (9th Cir. 1998). In his briefing before this court, Perez conceded that a two-hour delay due to mechanical problems would not constitute exceptional circumstances.[2] Rather, Perez argues

---

[2]Because Perez conceded this argument in his brief, we do not consider whether the overheating of a vehicle which causes a delay in reaching the courthouse constitutes exceptional circumstances. We do note, however, that this argument is not foreclosed by our decision in *Sharma v. INS*, 89 F.3d 545, 547 (9th Cir. 1996). In *Sharma*, we held that a forty-five minute to one hour delay due to traffic congestion and parking trouble did not qualify as exceptional circumstances. *Id*. at 547. Traffic and parking trouble are circumstances that an alien may fairly be expected to anticipate. By contrast, a car's mechanical failure is generally an unanticipated occurrence which is "beyond the control of the alien." 8 U.S.C. § 1229a(e)(1). We nevertheless leave the resolution of whether such a circumstance is "exceptional" within the meaning of the INA for a time when that argument is properly before us.

that the IJ abused his discretion in requiring Perez to demonstrate exceptional circumstances in order to reopen his proceedings because he did not, in fact, fail to appear. We agree.

[3] In determining whether a petitioner failed to appear, we have placed particular emphasis on whether the IJ was still in the courtroom when the petitioner arrived at the courthouse. For example, in *Romani*, we held that petitioners did not fail to appear when they failed to enter the courtroom because their attorney's assistant erroneously told them that their case had already been decided. 146 F.3d at 739. In *Jerezano*, a case closely analogous to the one before us today, we held that a petitioner, who arrived fifteen to twenty minutes late to his removal hearing due to a stomach ailment that had kept him up the previous night, did not fail to appear despite his tardiness because the "IJ was still on the bench" when he arrived in the courtroom. 169 F.3d at 615 (explaining that "[w]hile an IJ need not linger in the courtroom awaiting tardy litigants, so long as he is there on other business . . . it is an abuse of discretion to treat a slightly late appearance as a nonappearance").[3] By contrast, in *Valencia-Fragoso v. INS*, we held that a petitioner failed to appear where she arrived four and one-half hours late and made no "showing that the IJ was still on the bench hearing cases" when she arrived in the courtroom. 321 F.3d 1204, 1205 (9th Cir. 2003).

[4] Applying this precedent, we hold that a petitioner who arrives late for his immigration hearing, but while the IJ is

---

[3]The Fifth Circuit, relying on our decision in *Jerezano*, has held that, under some circumstances, it is an abuse of discretion to treat tardiness as a failure to appear even where the IJ has already left the bench. *See Alarcon-Chavez v. Gonzales*, 403 F.3d 343, 346 (5th Cir. 2005). In *Alarcon-Chavez*, the IJ had already left the bench and was across the hall from the courtroom when the petitioner arrived twenty minutes late for his hearing. *Id*. at 345. Nevertheless, the Fifth Circuit concluded that the IJ's refusal to "step back across the hall and into the hearing room to consider Petitioner's case [was] unacceptable." *Id*. at 346. We need not consider here whether we should follow the Fifth Circuit in this regard.

still in the courtroom, has not failed to appear for that hearing. Accordingly, he is not required to demonstrate exceptional circumstances in order to reopen proceedings.[4] In the present case, Perez arrived in the courtroom when the IJ was still on the bench. Thus, he did not fail to appear for his immigration hearing. The IJ's failure to reopen or continue his case, even in the absence of exceptional circumstances, was an abuse of discretion.[5] *See, e.g.*, *Jerezano*, 169 F.3d at 615.[6] Because we

---

[4]For this reason, the dissent's arguments that rest on cases considering whether petitioners who failed to appear demonstrated exceptional circumstances in support of their motions to reopen are not relevant. *See Sharma*, 89 F.3d at 547 (holding that a forty-five minute to one hour delay due to traffic congestion and parking trouble does not constitute exceptional circumstances); *Singh v. INS*, 295 F.3d 1037, 1039 (9th Cir. 2002) (holding exceptional circumstances were present where petitioner was two hours late for a hearing, but had timely appeared at all prior hearings and was eligible for adjustment of status as the spouse of a U.S. citizen). Where, as here, a petitioner does not fail to appear for his hearing, he need not demonstrate exceptional circumstances in order to reopen proceedings. Cases addressing what constitutes "exceptional circumstances" are therefore not pertinent.

[5]We recognize that Perez's lawyer had already left. He could, of course, have been instructed to return to the courtroom.

[6]The dissent argues that our holding is inconsistent with precedent and unworkable. The dissent is wrong on both counts. We have never held that a petitioner who arrived while the IJ was still in the courtroom failed to appear. We refuse to do so now. The dissent would prefer a different rule that would define "failure to appear as not being present at the time noticed for hearing, if only one matter is scheduled, or as not being present when the particular matter is called, if more than one matter is on calendar for the same time." Under the dissent's rule, whether or not a petitioner fails to appear would depend on the fortuity of when his case is called. We see nothing more workable about that rule than ours.

The circumstances of the present case illustrate why the dissent's rule would lead to unduly harsh results. Even assuming that a car's mechanical failure does not constitute exceptional circumstances, the reality is that cars break down and overheat. Under the dissent's view, removal could be required under these circumstances. This would be so even where, as here, a petitioner makes a good faith attempt to (and does in fact) appear in immigration court despite the occurrence of an unforseen event and

conclude that a remand is warranted on the ground that Perez did not fail to appear, we do not address his remaining two challenges to the BIA's denial of his motion to reopen.

## IV.    Conclusion

For the reasons set forth above, we GRANT the petition for review and REMAND to the BIA with instructions to remand to the IJ in order to permit Perez to present his claims for asylum and withholding of removal or, in the alternative, voluntary departure.

**GRANTED AND REMANDED.**

---

RYMER, Circuit Judge, dissenting:

Juan Antonio Perez was *two hours* late for his immigration hearing — so late that even his lawyer had given up and gone home. Perez concedes there were no exceptional circum-

---

despite the fact that the IJ is present in the courtroom and able to hear his case. Under the dissent's view, removal would be justified under these circumstances even though a petitioner might be eligible for some form of relief. For example, in the present case, even if the dissent is correct that Perez would lose on the merits, he might well be eligible for voluntary departure. *See* 8 U.S.C. § 1229c(b)(1). There is a significant difference between a removal order and a grant of voluntary departure. A removal order bars a petitioner from reentering the United States for up to ten years (or twenty years in the case of a second or subsequent removal or in the case of an alien convicted of an aggravated felony). *See* 8 U.S.C. § 1182(a)(9)(A). Generally, these severe bars do not attach where a petitioner is granted, and timely complies with, an order of voluntary departure. *But see* 8 U.S.C. § 1182(a)(9)(B) (creating three and ten year bars to returning to the United States where an individual granted voluntary departure has lived in the United States illegally for certain periods of time). We see no reason for so harsh a result as would flow from the dissent's rule.

stances. Nevertheless, the majority holds, he did not "fail to appear" because, apparently,[1] the judge was leaving the bench but hadn't yet left the courtroom when Perez arrived. This stretches *Romani v. INS*, 146 F.3d 737, 739-39 (9th Cir. 1998), and *Jerezano v. INS*, 169 F.3d 613, 615 (9th Cir. 1999), to the breaking point, and stuffs *Sharma v. INS*, 89 F.3d 545, 547 (9th Cir. 1996), into a teapot. It also creates an unworkable construct. I must, therefore, part company.

In *Jerezano*, we invalidated an in absentia order of deportation when the delay was short — 15 or 20 minutes — *and* the IJ was still hearing cases when the alien arrived.[2] 169 F.3d at 614-15. Here, the delay was not short nor was the IJ hearing cases. In *Romani*, the aliens were at the courtroom on time but were erroneously told by counsel's assistant not to go in because their case had been decided. *Romani* was not a "failure to appear" case because the Romanis were where they were supposed to be *on time*. 146 F.3d at 738. Perez was not, nor was he misdirected.

This case is far closer to *Sharma*, where the aliens arrived at the hearing between 45 minutes and 1 hour late due to traffic congestion and trouble finding a place to park. We concluded that these were not "exceptional circumstances" under 8 U.S.C. § 1252b(c)(3). Although we did not explicitly consider whether delay of this order of magnitude was a "failure

[1]I say "apparently" because there are no declarations of any sort in the record about what actually happened. As the immigration judge (IJ) found in denying Perez's motion to reopen, there is no evidence showing when Perez arrived at court, or what was going on when he got there. Not surprisingly, the regulations require motions to reopen to be supported by statements under oath and by other evidentiary material. 8 C.F.R. § 1003.23(b)(3). On this ground alone, the petition should be denied.

[2]The delay in the Fifth Circuit case upon which the majority relies was likewise short — 20 minutes. *Alarcon-Chavez v. Gonzales*, 403 F.3d 343, 346 (5th Cir. 2005). In holding that there was no failure to appear but only "a slight tardiness," the court made a point of noting that "[o]ur holding today will not require IJs to tolerate substantially tardy litigants." *Id.*

to appear," implicitly it was, for otherwise we would not have reached the issue of exceptional circumstances. *See also Valencia-Fragoso v. INS*, 321 F.3d 1204 (9th Cir. 2003) (holding that a four and one-half hour tardy appearance was a failure to appear).

Assuming that a little wiggle room is appropriate,[3] the majority abandons *Jerezano*'s tether to *short* delay and instead founds its new rule on a "late" arrival for an immigration hearing "while the IJ is still in the courtroom." In this, it also jettisons the other lynchpin in *Jerezano*, that the IJ be still in the courtroom *hearing cases* when the alien arrives. And it takes no account of the fact that Perez's late appearance was in form only; by then, Perez was in no position to respond on the merits because he was so late even his lawyer was no longer there.

Actually, Perez had no evident hope of succeeding on the merits. His papers suggest no reason why he should not be deported. So the decision here also departs from *Singh v. INS*, 295 F.3d 1037 (9th Cir. 2002). There, we held that the BIA abused its discretion in refusing to reopen a case where the petitioner was two hours late, missed his hearing, and "denial [would have led] to the unconscionable result of deporting an individual eligible for relief from deportation." *Id.* at 1039-40. We found Singh's case exceptional because the petitioner "had no possible reason to try to delay the hearing." *Id.* at 1040. Petitioners without a shot at success, on the other hand, have every reason to try for delay.

In sum, the majority opinion overrides *Sharma* and effec-

---

[3]The cleanest rule would be to define failure to appear as not being present at the time noticed for hearing, if only one matter is scheduled, or as not being present when the particular matter is called, if more than one matter is on calendar for the same time. Of course, this would not mean that an IJ in a particular case, depending upon the circumstances presented to him, could not exercise his discretion to cut the late-comer slack.

tively overrides *Jerezano* and *Romani* as well. It ignores the ingredient found critical in *Singh* — that the petitioner was eligible for relief — in favor of an approach that allows the system to be gamed. Finally, it burdens the immigration courts with an uncertain obligation to hear "late" arrivals so long as the judge is in the courtroom.

I wouldn't go down any of these paths. Those facing removal should show up on time and be ready to go forward when their case is called. At the very least, they should be in court within a few minutes of the scheduled time, or call in to explain that they will be late.

In any event, I do not believe the IJ abused his discretion in declining to reopen Perez's in absentia order. Without exceptional circumstances to explain it, Perez arrived two hours, not just a few minutes, beyond the scheduled time for his appearance, and there is no evidence that Perez was in court, ready to go, while the judge was on the bench. Consequently, I would deny the petition.