**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| CLAUDIA ELENA MONTEJO-GONZALEZ; DANY JUAN FRANCISCO MONTEJO; MARIA NATALIA FRANCISCO MONTEJO, | No. 21-304 |
| | Agency Nos. A201-670-355 A201-670-354 A201-670-353 |
| *Petitioners*, | |
| | OPINION |
| v. | |
| PAMELA BONDI, Attorney General, | |
| *Respondent*. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted September 11, 2025
San Francisco, California

Filed February 5, 2026

Before: Mary H. Murguia, Chief Judge, and Consuelo M.
Callahan, Morgan B. Christen, Jacqueline H. Nguyen,
Michelle T. Friedland, Ryan D. Nelson, Kenneth K. Lee,
Lucy H. Koh, Jennifer Sung, Salvador Mendoza, Jr. and
Roopali H. Desai, Circuit Judges.

Opinion by Judge Desai;
Concurrence by Judge Friedland;
Dissent by Judge R. Nelson

## SUMMARY[*]

### Immigration

Granting Claudia Elena Montejo-Gonzalez's petition for review of a Board of Immigration Appeals ("BIA") decision, the en banc court held that the immigration judge ("IJ") and the BIA abused their discretion in denying reopening of her in-absentia removal order and those of her children, and remanded.

An IJ ordered petitioners removed in absentia when they did not appear for their initial hearing. Petitioners moved to reopen, explaining that they were late because of two major car accidents that caused a severe traffic jam. The IJ and BIA denied the motion on the ground that traffic is not an "exceptional circumstance."

Under 8 U.S.C. § 1229a(b)(5)(C)(i), as relevant here, an in-absentia removal order may be rescinded if the noncitizen demonstrates that failure to appear was because of "exceptional circumstances." In addition, 8 U.S.C. § 1229a(e)(1) defines "exceptional circumstances" and provides a non-exhaustive list of examples of sufficiently exceptional circumstances, including "battery or extreme

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

cruelty" and "serious illness or death," but not "less compelling circumstances."

The en banc court concluded that "exceptional circumstances" must (1) cause the failure to appear, (2) be beyond the petitioner's control, and (3) be sufficiently compelling. The en banc court explained that the agency must consider the totality of the circumstances.

However, to the extent the court suggested in *Hernandez-Galand v. Garland*, 996 F.3d 1030 (9th Cir. 2021), that the possibility of unconscionable results is a standalone element of "exceptional circumstances" that the agency must consider, the en banc court overruled that holding.

The en banc court also clarified that the court has never adopted a rule that traffic delay is per se unexceptional. Likewise, the en banc court rejected any categorical rules dictating what does or does not meet that standard. Accordingly, the en banc court held that the IJ and BIA abused their discretion by applying a bright line rule here that "traffic" cannot constitute exceptional circumstances.

The en banc court also concluded that the agency failed to consider the totality of the circumstances here, such as whether the extraordinary traffic delays were exceptional and beyond petitioners' control, whether petitioners were diligent, and whether they lacked motive to evade their hearing.

Concurring in part and concurring in the judgment, Judge Friedland wrote that, prior to oral argument, she had not read the agency's decision as applying a per se rule. Instead, Judge Friedland initially understood the

agency's decision as having properly considered the totality of the circumstances. But because the Government asserted at oral argument that the court's decisions established a per se rule that traffic is never an extraordinary circumstance, and because it asserted that the agency had relied upon that rule in denying reopening here, Judge Friedland agreed that the proper course was to remand.

Dissenting, Judge R. Nelson, joined by Judges Callahan, Nguyen, and Lee, wrote that the majority correctly overruled *Hernandez-Galand v. Garland*, but wrongly concluded that the agencies applied a per se traffic rule here. Even if the traffic problems here were extraordinary, unusual, and beyond petitioners' control, Judge R. Nelson explained it was not an abuse of discretion to conclude that they were less compelling than serious illness or death (statutory examples of "exceptional circumstances"). Reviewing the administrative record (and not the government's statements at oral argument), Judge R. Nelson concluded that the agencies faithfully applied precedent and reasonably analyzed the totality of the circumstances to reach the correct conclusion—and in any event did not abuse their discretion.

## COUNSEL

Katherine E. Munyan (argued) and Daniel A. Rubens, Orrick Herrington & Sutcliffe LLP, New York, New York; Nicole R. Fox, Orrick Herrington & Sutcliffe LLP, Irvine, California; Tina N. Malek, Malek Law Group APC, San Diego, California; for Petitioner.

Drew C. Ensign (argued), Deputy Assistant Attorney General; Anthony Nardi and Rosanne M. Perry, Trial

Attorneys; Elizabeth K. Fitzgerald-Sambou and Jessica E. Burns, Senior Litigation Counsel; Melissa Neiman-Kelting, Assistant Director; John W. Blakeley, Senior Counsel for Appellate Litigation; Office of Immigration Litigation; Brian M. Boynton, Principal Deputy Assistant Attorney General; Brett A. Shumate, Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

DESAI, Circuit Judge:

On their way to an initial hearing before an immigration judge ("IJ") in Seattle, Washington, petitioners Claudia Elena Montejo-Gonzalez and her two children encountered two major car accidents that caused a severe traffic jam on the highway. Petitioners were late for their hearing, and the IJ ordered them removed in absentia. Petitioners promptly moved to reopen under 8 U.S.C. § 1229a(b)(5)(C)(i), explaining that they were late because of exceptional circumstances beyond their control. The IJ and Board of Immigration Appeals ("BIA") denied the motion on the ground that traffic cannot qualify as an exceptional circumstance.

We took this case en banc to clarify what constitutes exceptional circumstances beyond a petitioner's control. The statutory term "exceptional circumstances" necessarily involves a fact-intensive and case-specific inquiry. And it precludes any categorical rules dictating what can or cannot be an "exceptional circumstance" in every case. We hold that

the IJ and BIA abused their discretion by applying a per se rule, and we remand to the BIA to consider the totality of the circumstances.

## Background

Ms. Montejo-Gonzalez entered the United States in December 2018 with her eleven-year-old son and seven-year-old daughter. They applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").

Petitioners were scheduled to appear before an IJ in Seattle, Washington at 8:30 a.m. on October 31, 2019. At 6:45 a.m. that morning, Ms. Montejo-Gonzalez and her children got in a car with a family friend whom they prearranged to drive them from Bremerton, Washington, to Seattle for their hearing. Under ordinary circumstances and accounting for typical rush hour traffic, the trip would take an hour and a half. But the drive that day turned into almost four hours on the highway.

On their way to the hearing, petitioners encountered two major accidents that caused severe traffic delay. Petitioners, who were unrepresented by counsel at the time, did their best to document the traffic and get to court. They were two hours late for the hearing. When Ms. Montejo-Gonzalez got to the courthouse, she spoke with two clerks to try to have her and her children's cases heard. Her requests were denied, and an IJ entered an order removing them in absentia.

Petitioners moved to reopen and asked the IJ to give them "an opportunity to present" their applications for asylum, withholding of removal, and CAT protection. They attached their applications and supporting evidence to their motion to reopen, including several photos they took on their

way to the hearing and a news alert showing the major accidents and extensive traffic.

The IJ denied the motion. He held that Ms. Montejo-Gonzalez did not "articulate[] a compelling circumstance" that justified her late arrival to the hearing because, under *Arredondo v. Lynch*, 824 F.3d 801, 806 (9th Cir. 2016), "[t]raffic and trouble finding parking, standing alone, do not constitute exceptional circumstances justifying a motion to reopen." The IJ did not grapple with petitioners' evidence documenting the severity of the traffic conditions or their efforts to get to court, nor did the IJ address whether their late appearance was beyond their control.

The BIA adopted and affirmed the IJ's decision. The BIA likewise relied on this court's decisions in *Arredondo* and *Sharma v. I.N.S.*, 89 F.3d 545, 547 (9th Cir. 1996), to hold that "traffic congestion, coupled with the respondent's explanation that she miscalculated the time it would take to arrive at the court and a lack of showing that the Immigration Judge was still on the bench, do not constitute exceptional circumstances." The BIA acknowledged petitioners' arguments that *Arredondo* is factually distinguishable, but it simply concluded that "typical daily occurrences" like traffic delays "do not qualify as exceptional circumstances." Ms. Montejo-Gonzalez petitioned this court for review.

**Standard of Review**

We review the denial of a motion to reopen for abuse of discretion. *Hernandez-Galand v. Garland*, 996 F.3d 1030, 1034 (9th Cir. 2021). "The BIA abuses its discretion when it acts arbitrarily, irrationally, or contrary to the law, and when it fails to provide a reasoned explanation for its actions." *Id.* (quoting *Tadevosyan v. Holder*, 743 F.3d 1250, 1252–53 (9th Cir. 2014)). Because the BIA adopted and affirmed the

IJ's decision here, we review both decisions. *See Ali v. Holder*, 637 F.3d 1025, 1028 (9th Cir. 2011) (citing *Matter of Burbano*, 20 I. & N. Dec. 872, 874 (BIA 1994)).

## Discussion

Under the Immigration and Nationality Act ("INA"), an in-absentia removal order "may be rescinded . . . upon a motion to reopen filed within 180 days after the date of the order of removal if the [noncitizen] demonstrates that the failure to appear was because of exceptional circumstances." 8 U.S.C. § 1229a(b)(5)(C)(i). The INA defines "exceptional circumstances" as "exceptional circumstances (such as battery or extreme cruelty to the [noncitizen] or any child or parent of the [noncitizen], serious illness of the [noncitizen], or serious illness or death of the spouse, child, or parent of the [noncitizen], but not including less compelling circumstances) beyond the control of the [noncitizen]." 8 U.S.C. § 1229a(e)(1). In other words, the circumstances (1) must cause the noncitizen's failure to appear, (2) must be beyond the petitioner's control, and (3) must be sufficiently compelling.

"Exceptional circumstances" are "by definition unique," and the statute's listed examples of compelling circumstances are "explicitly not exhaustive." *V. Singh v. Garland*, 117 F.4th 1145, 1150 (9th Cir. 2024). We thus look "to the particularized facts presented in each case" to decide whether a failure to appear was because of sufficiently compelling circumstances beyond the petitioner's control. *B. Singh v. I.N.S.*, 213 F.3d 1050, 1052 (9th Cir. 2000). This requires considering the totality of the circumstances. Evidence relevant to the statutory factors may include whether the petitioners were diligent, whether they encountered external or unforeseen circumstances, and

whether they lacked a motive to evade the hearing. *See, e.g.*, *Chete Juarez v. Ashcroft*, 376 F.3d 944, 948 (9th Cir. 2004); *Lo v. Ashcroft*, 341 F.3d 934, 938 (9th Cir. 2003); *R. Singh v. I.N.S.*, 295 F.3d 1037, 1040 (9th Cir. 2002).

Other factors may be relevant depending on the circumstances. To the extent we suggested in *Hernandez-Galand* that the possibility of unconscionable results is a standalone element of "exceptional circumstances" that the agency must consider, we overrule that holding. 996 F.3d at 1036–37. To be sure, the agency may consider whether a petitioner had a colorable claim for relief or was merely delaying the inevitable. If, for example, a petitioner has a valid claim for relief from removal, this evidence may support an inference that the petitioner intended to attend their hearing and missed it for a compelling reason beyond their control. *See R. Singh*, 295 F.3d at 1040; *Chete Juarez*, 376 F.3d at 949 & n.5. On the other hand, if a petitioner faces "adverse actions" or has "no asylum or other claims for relief pending," this evidence may support an inference that the petitioner had no motive to appear. *See R. Singh*, 295 F.3d at 1040. Thus, whether any particular evidence is relevant to the statutory requirements will depend on the "particularized facts" presented in each case. *Id.*

Our totality-of-the-circumstances approach adheres to Congress's intent. Congress "expect[ed] that in determining whether [a noncitizen's] failure to appear" was because of exceptional circumstances beyond their control, "the Attorney General will look at the totality of the circumstances." H.R. Rep. No. 101-955 (1990), as reprinted in 1990 U.S.C.C.A.N. 6784, 6797. Our approach also aligns with the BIA and several other circuits. The BIA instructs IJs to consider the "totality of the circumstances" when "determining whether [a noncitizen] has established

exceptional circumstances." *Matter of S-L-H- & L-B-L-*, 28 I. & N. Dec. 318, 321 (BIA 2021); *see also In Re B-A-S-*, 22 I. & N. Dec. 57, 58 (BIA 1998). And at least three of our sister circuits require the same. *See E. A. C. A. v. Rosen*, 985 F.3d 499, 504 (6th Cir. 2021) (the agency must consider the "totality of the circumstances" when deciding whether a petitioner meets the exceptional circumstances standard (quoting *Acquaah v. Holder*, 589 F.3d 332, 335 (6th Cir. 2009))); *Murillo-Robles v. Lynch*, 839 F.3d 88, 91 (1st Cir. 2016) (the agency "must take into account the totality of the circumstances"); *Nazarova v. I.N.S.*, 171 F.3d 478, 484 (7th Cir. 1999) (considering "[t]he entire unfortunate chain of events").

## I.  There is no per se rule that a traffic delay cannot be an exceptional circumstance.

The IJ and BIA relied on *Arredondo* and *Sharma* for the categorical proposition that traffic delays "do not constitute exceptional circumstances justifying a motion to reopen." *See Arredondo*, 824 F.3d at 806; *Sharma*, 89 F.3d at 547. The government likewise claimed at oral argument that our cases have "adopted a rather categorical rule" that traffic cannot be an exceptional circumstance.

That is incorrect. In *Arredondo*, the petitioner missed her hearing because of her car's mechanical failure and was removed in absentia. We concluded that the car's mechanical failure "does not *alone* compel granting a motion to reopen based on 'exceptional circumstances.'" *Arredondo*, 824 F.3d at 806 (emphasis added). But our analysis did not stop there. We considered the "totality of the circumstances," including that the petitioner "purposely took an unnecessarily long route to court," gave herself "little margin for error" despite the "usual traffic conditions," and

did not attempt to get to court "but instead had her car towed to a mechanic." *Id.* Worse yet, the petitioner had counsel but ignored "her lawyer's phone calls in the days before the hearing," and "failed to contact her lawyer" when her car broke down. *Id.* & n.3. Considering all these factors, we held that the petitioner did not establish that she missed her hearing because of exceptional circumstances.

*Sharma*, the other case cited by the BIA, also did not adopt a bright-line rule. There, we held without elaboration that the petitioners' "traffic difficulties" did "not qualify as exceptional circumstances beyond petitioners' control." *Sharma*, 89 F.3d at 547 (citation modified). The petitioners in that case argued only that we should import the former "reasonable cause" statutory standard into the current "exceptional circumstances" standard, which we declined to do. *Id.* We did not address the meaning or scope of "exceptional circumstances," nor did we adopt a categorical rule that traffic can never qualify.

Not only did the agency misconstrue our cases, it also disregarded the BIA's precedent rejecting a "per se rule that traffic conditions cannot be an acceptable reason for a tardy appearance at a hearing." *Matter of S-L-H-*, 28 I. & N. Dec. at 323; *see Israel v. I.N.S.*, 785 F.2d 738, 740 (9th Cir. 1986) ("The BIA acts arbitrarily when it disregards its own precedents and policies without giving a reasonable explanation for doing so."). Indeed, the BIA must decide "case-by-case" whether a petitioner established exceptional circumstances by considering all "relevant factors in the totality of the circumstances." *Matter of S-L-H-*, 28 I. & N. Dec. at 324, 325. Applying the correct standard in that case, the BIA concluded that the petitioner established exceptional circumstances for missing her hearing because a snowstorm "caused multiple accidents and severe traffic" on the

highway. *Id.* at 324. The BIA considered several relevant factors, including that the petitioner hired a driver and planned to attend the hearing, appeared at multiple prior hearings, and submitted documents corroborating the "severe weather and traffic conditions" that exceeded "ordinary or foreseeable traffic delays." *Id.* Thus, while the accidents and traffic that the petitioner experienced in *Matter of S-L-H-*, standing alone, may not have been exceptional, the BIA held that the petitioner established exceptional circumstances for missing her hearing under the totality of the circumstances.

We have never adopted a rule that traffic (or any other circumstance) is per se unexceptional.[1] And we reject any bright-line rules about what can or cannot qualify as an exceptional circumstance because the statutory test depends on the totality of the circumstances in each petitioner's case.

## II.   The IJ and BIA failed to consider the totality of the circumstances.

Because they misunderstood our case law, the IJ and BIA applied a per se rule that "traffic" cannot satisfy 8 U.S.C. § 1229a(b)(5)(C)(i) and ignored multiple relevant factors. This was an abuse of discretion. *See V. Singh*, 117 F.4th at 1150.

First, the IJ and BIA did not consider whether the traffic conditions petitioners encountered were sufficiently compelling and beyond their control. Ms. Montejo-Gonzalez filed a declaration explaining that she encountered "two

---

[1] The inverse is also true. If a noncitizen moved to reopen under 8 U.S.C. § 1229a(b)(5)(C)(i), citing a family member's serious illness, we would not hold that the noncitizen is automatically entitled to relief without considering the totality of the circumstances.

major accidents" on the way to court, became stuck in traffic, and spent almost four hours on the road. She also attached multiple photographs showing the severe traffic and a screenshot of a news alert stating that traffic on the highway was backed up for ten miles. The agency ignored this evidence.

The government conceded at oral argument that the traffic conditions on the day of the hearing were "extraordinary and unusual." BIA precedent has also found similar road conditions—"multiple accidents and severe traffic" on the highway—sufficiently compelling to establish exceptional circumstances. *Matter of S-L-H-*, 28 I. & N. Dec. at 324. Yet the agency characterized the circumstances here as a mere "typical daily occurrence[]" without considering petitioners' evidence about the severity of the traffic they encountered. The dissent insists that "[t]raffic accidents and bumper-to-bumper traffic are common contingencies" that do "not meet the statutory definition" of compelling circumstances. Dissent at 31. But the agency cannot simply conclude that traffic and car accidents are "common" without considering the specific circumstances of each case.

The BIA also read too much into Ms. Montejo-Gonzalez's statement in her declaration apologizing for "miscalculating" the time it would take to get to court. The government contends this isolated statement proves that her failure to appear was not beyond her control. Not so. The other parts of Ms. Montejo-Gonzalez's declaration make clear that she did not "miscalculate" the time to get to court. To the contrary, she calculated that it would take an hour and a half to get to court accounting for normal traffic and under usual rush hour conditions, and that she would arrive with time to spare. There is no evidence that those calculations

were wrong. Instead, two major accidents caused the trip to take over twice as long on the day of the hearing. A petitioner's attempt to express remorse or accept responsibility does not defeat a claim of exceptional circumstances.

Consider an example. A petitioner drives to his immigration hearing, parks across the street, and gets hit by a car while crossing the street resulting in an emergency transport to the hospital. The petitioner misses his hearing and is removed in absentia. The petitioner moves to reopen and submits a declaration explaining that he planned to attend the hearing, but a car hit him while he was in a crosswalk with a "walk" signal. He attaches documentation of his claim that he was hit by a car and was immediately transported to the hospital for treatment. In his declaration, petitioner also expresses remorse for not looking both ways before crossing the street and apologizes for this mistake. His apology does not dictate that a court will find that the circumstances were within his control. Rather, the BIA must consider the facts in the record—in context and in totality— to determine whether the circumstances were beyond the petitioner's control. So too here. Ms. Montejo-Gonzalez's apology for failing to predict that two major car accidents would cause a multi-hour traffic jam does not prove that her tardiness was within her control. The BIA must consider the entire record to decide whether petitioners' late appearance was beyond their control.

Second, because the IJ and BIA misunderstood our case law, they ended the analysis before considering petitioners' diligence. Petitioners presented evidence suggesting they "did all they reasonably could" to have their day in court. *Lo*, 341 F.3d at 938. They arranged for a friend to drive them to court, accounted for typical traffic conditions, and left home

early enough to make it to court in advance of their hearing. When they encountered severe traffic that more than doubled their travel time, they took several photographs to document the reason for their delay, and they persisted in getting to the courthouse. They were also unrepresented by counsel and thus unable to call an attorney for help to seek a continuance. When they arrived at the courthouse at 10:30 a.m.—almost four hours after leaving home—the judge had adjourned. Still, Ms. Montejo-Gonzalez spoke to two clerks to try to have her and her children's cases heard that day. The IJ and BIA did not address any of these facts.

The government and the dissent maintain that petitioners cannot show diligence because they should have given themselves a greater "cushion" to get to court. Dissent at 31. But there is nothing inherently unreasonable about planning to arrive at a hearing fifteen minutes before it starts. Indeed, even if ordinary rush hour traffic made petitioners slightly late, "a petitioner who arrives late for his immigration hearing, but while the IJ is still in the courtroom, has not failed to appear for that hearing." *See Perez v. Mukasey*, 516 F.3d 770, 774 (9th Cir. 2008). And more to the point, the fifteen-minute cushion petitioners gave themselves did not cause their failure to appear. Petitioners were *two hours* late for their hearing, and it was the two major accidents causing a ten-mile backup that caused them to be late. Even if they gave themselves an extra ninety minutes to get to court, they still would have been late because of the severe traffic that morning. Exercising diligence does not mean a petitioner must predict the very "extraordinary circumstance" they contend caused their failure to appear. The BIA must consider petitioners' diligence based on what a reasonable person would do under the circumstances, without the benefit of 20/20 hindsight.

Similarly, because it drew a bright-line rule on traffic, the agency did not consider whether petitioners lacked a motive to evade their hearing. Ms. Montejo-Gonzalez's declaration detailed her intent and preparations to appear. She arranged for a ride to court, she tried to have her and her children's case heard when they arrived late, and she promptly moved to reopen their cases. She also explained that she never missed a prior appointment with the DHS agents who came to her house every month since she arrived in the United States. *See, e.g.*, *Chete Juarez*, 376 F.3d at 948 (considering that "[p]etitioner appeared for every scheduled hearing" before the one she missed when evaluating whether she had motive to evade the hearing); *R. Singh*, 295 F.3d at 1040 (considering that petitioner "diligently appeared for all of his previous hearings" when concluding that he "had no possible reason to try to delay the hearing"). Beyond that, Ms. Montejo-Gonzalez is pursuing not only her own rights but also the rights of her children. The agency did not address whether Ms. Montejo-Gonzalez had any motive to evade her and her children's immigration proceedings.

\*          \*          \*

In sum, the agency's truncated analysis failed to consider the totality of the circumstances relevant in this case, such as whether the extraordinary traffic delays were exceptional and beyond petitioners' control, whether petitioners were diligent, and whether petitioners lacked motive to evade their hearing. On remand, the BIA must assess the totality of the circumstances to determine whether petitioners missed their hearing because of exceptional circumstances and are thus entitled to have their day in court.

## Conclusion

Whether a petitioner can establish "exceptional circumstances" under 8 U.S.C. § 1229a(b)(5)(C)(i) depends on the totality of the circumstances in each case, and we reject any categorical rules dictating what does or does not meet that standard. The IJ and BIA abused their discretion by misreading our prior case law and applying a bright line rule that "traffic" cannot constitute exceptional circumstances.

The petition is **GRANTED**. We remand to the BIA for further proceedings consistent with this opinion.

---

FRIEDLAND, Circuit Judge, concurring in part and concurring in the judgment:

The majority holds that the BIA "abused [its] discretion by applying a per se rule" that "traffic delays 'do not constitute exceptional circumstances justifying a motion to reopen.'" Majority Op. at 5-6, 10. Prior to oral argument, I was inclined to disagree—I had not read the agency's decision as applying a per se rule. At oral argument, however, the Government asserted that our prior decisions established a per se rule that traffic is never an extraordinary circumstance, and it asserted that the agency had relied upon that rule in denying reopening here. Because applying such a per se rule would have been incorrect for the reasons discussed in Section I of the majority opinion, I now agree that the proper course is to remand this case for the agency

to exercise its discretion under a correct understanding of the law.[1]

The majority reads both the IJ's and the BIA's decisions less charitably than I would have prior to the Government's statements at oral argument. It is true that the IJ quoted our holding in *Arredondo* that "[t]raffic and trouble finding parking, standing alone, do not constitute exceptional circumstances justifying a motion to reopen" in the course of concluding that Montejo-Gonzalez had not "articulated a compelling circumstance that prevented her from appearing at her hearing." *See* Majority Op. at 7; *see also Arredondo v. Lynch*, 824 F.3d 801, 806 (9th Cir. 2016). The BIA, too, cited *Arredondo* when it explained that "typical daily occurrences that may cause mishaps, delays, and oversight do not qualify as exceptional circumstances." *See* Majority Op. at 7. But those quotations were only part of the relevant discussion.

In addition to citing the traffic difficulties that Petitioners encountered, the IJ also noted that Montejo-Gonzalez admitted in her declaration that she "miscalculated how long it would take for her to get to the court." The BIA's analysis went further. In assessing whether Petitioners' lateness was beyond their control, the BIA noted that, according to Montejo-Gonzalez's declaration, she left herself a very small margin for error: "only . . . approximately 15 minutes to park and go through courthouse security, notwithstanding any traffic delays." The BIA considered Petitioners'

---

[1] I fully join in the majority's conclusion that the possibility of unconscionable results is not a standalone element that the agency must consider in assessing whether a petitioner has shown "exceptional circumstances" under 8 U.S.C. § 1229a(b)(5)(C)(i) and therefore do not comment further upon that holding.

evidence that they went "directly" to court, showing their intent to attend the hearing, but it explained that their intent did not demonstrate that their absence was caused by something other than a "typical daily occurrence[]."

Based on its review of that evidence, the BIA concluded that "the alleged difficulty [Petitioners] experienced" was "'less compelling' than the examples of circumstances listed in [8 U.S.C. § 1229a(e)(1)], such as 'battery or extreme cruelty to the alien or any child or parent of the alien, serious illness of the alien, or serious illness or death of the spouse, child, or parent of the alien.'" The BIA accordingly agreed with the IJ that "[t]he traffic congestion" Petitioners encountered that day, "coupled with" Montejo-Gonzalez's "explanation that she miscalculated the time it would take to arrive at the court," did not constitute "exceptional circumstances to justify the reopening of her proceedings." I disagree with the majority that the BIA "ignored multiple relevant factors" in its totality of the circumstances analysis, Majority Op. at 12, and I originally read it as having appropriately considered the traffic within a totality of the circumstances analysis, *see Hernandez v. Garland*, 52 F.4th 757, 770 (9th Cir. 2022) (explaining that the BIA need not "individually identify and discuss every piece of evidence in the record").

The Government's statements at oral argument, however, complicate the analysis. The Government argued that our court has a per se rule that traffic is never an extraordinary circumstance. Specifically, the Government stated that our "court appears to have adopted a rather categorical rule," and that the Government had "not asked this court to overrule that." Although the Government further stated that it did not "need to depend" on the existence of a categorical rule, the Government still

responded at least once that it read *Arredondo* in that manner, and it acknowledged that the BIA had relied on *Arredondo* in denying reopening here.

Remand is appropriate when it is unclear whether the agency applied the correct legal standard. *See Mendoza-Garcia v. Garland*, 36 F.4th 989, 999 (9th Cir. 2022). Although I would not have read the BIA's decision as having relied upon a per se rule, taking the Government's representations at oral argument seriously leads to the conclusion that the agency's decision is at least somewhat ambiguous, so I now think that remand is warranted here.

Under the correct legal test, the resolution of Petitioners' motion to reopen is not a forgone conclusion. The totality of the circumstances analysis allows the agency discretion to conclude that certain factors and pieces of evidence are relevant in certain cases but not relevant in others. The proper application of the totality of the circumstances analysis means that a traffic-based delay may prove an exceptional circumstance in one case but not in another. Whether Petitioners can meet the demanding statutory standard here is a question the agency must answer in the first instance.

R. NELSON, Circuit Judge, with whom CALLAHAN, NGUYEN, and LEE, Circuit Judges, join, dissenting:

The majority correctly overrules *Hernandez-Galand v. Garland*, 996 F.3d 1030, 1036–37 (9th Cir. 2021), and its progeny, which held "that the possibility of unconscionable results is a standalone element of 'exceptional circumstances' that the agency must consider." Maj. Op. at 9. That is no longer the law in this circuit. And the majority wisely does not defend the three-judge panel majority opinion.

Still, I disagree with the majority's separate justification for remand. It wrongly concludes that the agencies applied a per se rule that traffic conditions can never be exceptional circumstances. *Id.* at 12. As Judge Friedland notes, the majority "reads both the IJ's and the BIA's decision less charitably than I would have." Conc. Op. at 18. I agree that the majority does not afford the Immigration Judge (IJ) and Board of Immigration Appeals (BIA) proper deference. The agencies considered the totality of the circumstances and did not abuse their discretion. And our legal test must remain tied to the statutory language in 8 U.S.C. §§ 1229a(b)(5)(C)(i) and 1229a(e)(1). I respectfully dissent.

## I

Understand how we got here. The three-judge majority opinion extended our misguided precedent into indefensible territory. The en banc majority declines to defend the three-judge panel majority opinion, and for good reason. That wrongly decided opinion contravened controlling precedent and replaced a strict statutory standard with a judge-made multifactor balancing test. *See Montejo-Gonzalez v. Garland*, 119 F.4th 651, 655–56 (9th Cir. 2024), *vacated*,

141 F.4th 1334 (9th Cir. 2025). The three-judge panel majority only reached its result by ignoring the statutory language. Sections 1229a(b)(5)(C)(i) and 1229a(e)(1) allow discretion to excuse an alien's failure to appear only in "exceptional circumstances" that were both "beyond the control of the alien" and no "less compelling" than the listed extreme examples of "battery or extreme cruelty to the alien or any child or parent of the alien, serious illness of the alien, or serious illness or death of the spouse, child, or parent of the alien."

The three-judge panel majority wrongly reframed the statutory standard as a broader consideration about whether exceptional circumstances might warrant reopening or justify an alien's failure to appear. *Montejo-Gonzalez*, 119 F.4th at 653–55. By generalizing and broadening the governing text, the three-judge panel majority placed dispositive weight on factors with no causal relationship to Montejo-Gonzalez's failure to appear. *See, e.g.*, *id.* at 658–59. It also created "a punch list of prescribed non-statutory factors" that IJs would have to tick through "as part of an overall assessment into whether the circumstances are sufficiently exceptional to 'warrant' or 'justify' reopening and to avoid 'unconscionable results.'" *Id.* at 671 (Collins, J., dissenting). The three-judge panel "majority's loosely framed test b[ore] no relation to the stringent statutory standard that Congress adopted." *Id*.

The en banc majority rightly repudiates *Hernandez-Galand*, which set the court down this anti-statutory path. I agree with the majority on three points.

## A

First, the majority draws the standard closer to the statutory language. We now clarify that to qualify as

"exceptional circumstances" under § 1229a(e)(1), "the circumstances (1) must cause the [alien's[1]] failure to appear, (2) must be beyond the petitioner's control, and (3) must be sufficiently compelling." Maj. Op. at 8. In other words, under the statute's plain language, the circumstances must be causal (not post hoc), outside the petitioner's ability to account for and control, *and* not "less compelling" than "extreme cruelty" or serious illness or death of the alien or a close family member. *See* § 1229a(e)(1). The majority correctly uses the conjunctive "and," because all three conditions must be met for a circumstance to be "exceptional" under § 1229a. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 116–25 (2012) (conjunctive/disjunctive canon). This enunciation of the standard is both faithful to the statutory text and comprehensible for IJs as they consider the thousands of petitions to reopen in this circuit each year.

## B

Second, the majority repudiates the three-judge panel majority's holding that "[t]he IJ and BIA must consider 'whether the in absentia removal order would cause

---

[1] The majority replaces the statutory term "alien" with "noncitizen." We should apply Congress's statutory language, especially where the statutory language makes a difference. *See Monsalvo v. Bondi*, 604 U.S. 712, 749 n.1 (2025) (Alito, J., dissenting) ("[I]n the language of the [Immigration and Nationality] Act, 'alien' and 'noncitizen' are not synonymous."); *Avilez v. Garland*, 69 F.4th 525, 541 (9th Cir. 2023) (Bea, J., concurring) ("Federal courts applying federal immigration laws should not invent their own terminology to stand in place of definitions used in the congressional statutes they are tasked with applying."). Section 1229a applies only to an "alien" ("any person not a citizen or national of the United States," 8 U.S.C. § 1101(a)(3)), and not to a "noncitizen" more broadly.

unconscionable results' when determining whether a petitioner has shown exceptional circumstances." *Montejo-Gonzalez*, 119 F.4th at 658 (quoting *Hernandez-Galand*, 996 F.3d at 1034–35). The majority correctly holds that "[t]o the extent we suggested in *Hernandez-Galand* that the possibility of unconscionable results is a standalone element of 'exceptional circumstances' that the agency must consider, we overrule that holding." Maj. Op. at 9. Now "the agency *may* consider whether a petitioner had a colorable claim for relief or was merely delaying the inevitable" if, for example, "this evidence may support an inference that the petitioner intended to attend their hearing and missed it for a compelling reason beyond their control." *Id.* (emphasis added). That course correction is welcome, especially since a "compelling reason" must comply with the statutory text of § 1229a(e)(1).

Likewise, the majority clarifies that we "look 'to the particularized facts presented in each case' to decide whether a failure to appear was because of sufficiently compelling circumstances beyond the petitioner's control." *Id.* at 8 (quoting *B. Singh v. I.N.S.*, 213 F.3d 1050, 1052 (9th Cir. 2000)). Because "exceptional circumstances" are "by definition unique," courts must consider the totality of the circumstances. *Id.* (quoting *V. Singh v. Garland*, 117 F.4th 1145, 1150 (9th Cir. 2024)). But the totality of the circumstances must relate to the statutory language defining "exceptional circumstances."

Congress has defined "exceptional circumstances" such that not every factor courts may consider relevant can be considered. To the extent relevant evidence "may include whether the petitioners were diligent, whether they encountered external or unforeseen circumstances, and whether they lacked a motive to evade the hearing," *id.* at 8–

9, the evidence must causally relate back to the statutory language describing "exceptional circumstances." We should not—and the majority does not—lay out specific judge-made "factors" that IJs *must* consider before denying a motion to reopen. So long as the IJ "assess[es] the totality of the circumstances to determine whether petitioners missed their hearing because of exceptional circumstances" (defined as causal reasons outside the petitioners' control and no less compelling than the listed examples of battery, extreme cruelty, serious illness, or death involving the alien or the alien's child, spouse, or parent), he does not abuse his discretion by declining to analyze any extra-statutory "factor." *Id.* at 8, 16.

## C

Third, the majority correctly rejects "any bright-line rules about what can or cannot qualify as an exceptional circumstance because the statutory test depends on the totality of the circumstances in each petitioner's case." *Id.* at 12. The IJ is charged with determining whether the petitioner's absence was caused by "exceptional circumstances" outside her control or merely by understandable but "less compelling circumstances." § 1229a(e)(1). If traffic delays are to be considered exceptional, it can only be because those delays were no less compelling than serious illness or death.

The majority correctly notes that even one of the extreme examples specified in the statute—such as "serious illness or death of the spouse, child, or parent of the alien," § 1229a(e)(1)—would not mean that the alien "is automatically entitled to relief without considering the totality of the circumstances." Maj. Op. at 12. n.1. For example, if a petitioner's child happened to fall seriously ill,

but the petitioner chose to go to Disneyland rather than attend her hearing, her failure to appear would not be "because of" any exceptional circumstance. § 1229a(b)(5)(C)(i). And if a petitioner missed her hearing because she caused the death or illness of her spouse, that would not be "beyond the control of the alien." § 1229a(e)(1).

Still, in most cases, traffic conditions alone will not qualify as exceptional circumstances. *See Sharma v. I.N.S.*, 89 F.3d 545, 547 (9th Cir. 1996); *Arredondo v. Lynch*, 824 F.3d 801, 806 (9th Cir. 2016). Only circumstances that comport with the statutory language satisfy the standard. And IJs may rely on our precedent to weigh the exceptionality of circumstances. As here, an IJ does not abuse his discretion by examining our precedent, analyzing the totality of the circumstances as circumscribed by the statutory language, and concluding that the precedent applies in a given case.

## II

Despite its rollback of our prior misguided precedent, the majority reaches the wrong result because it misreads the agencies' decisions and the record and misapplies the abuse of discretion standard of review. The IJ did not apply a per se rule that traffic can never be exceptional and reasonably considered the totality of the circumstances.

## A

Contrary to the majority's assertions, the IJ and BIA did not see the words "traffic delays," ignore the circumstances, and apply a per se rule. Judge Friedland gets this analysis correct. *See* Conc. Op. at 18–19. The agencies examined the totality of the circumstances and reasonably concluded

that Montejo-Gonzalez did not meet the statutory criteria for reopening her case.

The agencies did not apply a "truncated analysis" or "a bright-line rule on traffic." Maj. Op. at 16. The agencies properly weighed the evidence (including Montejo-Gonzalez's declaration), examined the totality of the circumstances (including Montejo-Gonzalez's failure to leave early enough to account for even the smallest of contingencies), and applied our caselaw to the facts. The agencies also considered Montejo-Gonzalez's likelihood of success on the merits, considered whether she might be mistaken about her hearing time, and considered our holdings in similar cases. That the agencies cited *Sharma* and *Arredondo*—precedent with similar enough facts to be persuasive—does not mean that they applied a categorical rule without examining the totality of the circumstances. On the contrary, given our caselaw and the facts here, they reached reasonable conclusions.

The agencies also did not misread our caselaw to say that traffic can *never* constitute an exceptional circumstance. The IJ cited our caselaw in support of his conclusion that this particular "respondent has [not] articulated a compelling circumstance."

The BIA did the same—citing *Arredondo* in support of its particularized conclusion that "the alleged difficulty *the respondent* experienced on the day of her hearing is still 'less compelling' than the examples" listed in the statute (emphasis added). Far from falling back on a per se rule, the BIA explained that "[t]he traffic congestion, *coupled with* the respondent's explanation that she miscalculated the time," "a lack of showing that the Immigration Judge was still on the bench," and her failure to demonstrate "that she

would have been entitled to relief had she appeared" all factored into its conclusion that Montejo-Gonzalez failed to show exceptional circumstances (emphasis added). As in *Arredondo*, the BIA's "analysis did not stop" with consideration of the traffic delays. *Montejo-Gonzalez*, 119 F.4th at 656–57 (attempting to distinguish *Arredondo*). The BIA faithfully applied *Arredondo*, and the majority errs in trying to distinguish *Arredondo*'s analysis from the BIA's here. *See* Maj. Op. at 10–11. Neither the IJ nor the BIA applied a per se rule that traffic—especially when truly extraordinary and unusual—can *never* be an "exceptional circumstance" under the statute. They just concluded that it was not an exceptional circumstance here.

Judge Friedland recognizes this reasonable reading of the BIA's decision, to which we must give deference. Conc. Op. at 18–19. She reaches a different result based on the government's suggestion at oral argument that *Arredondo* imposed a per se rule that traffic delays can never constitute exceptional circumstances. *Id.* at 19–20. Although the government's counsel initially stated that he read *Arredondo* as imposing a per se rule, when pressed on whether the BIA did so, counsel stated that he was "not sure exactly how [the BIA] read" *Arredondo*, and did not think that the BIA "necessarily was" applying a per se rule about traffic in this case. The government further clarified that "the BIA has precedent that suggests that extreme traffic, at least when paired with both diligence and extreme weather, could potentially suffice."

Regardless, we review the administrative record of the agency, not the government's post-hoc legal arguments. *See DHS v. Regents of Univ. of Cal.*, 591 U.S. 1, 67 (2020) (Kavanaugh, J., concurring in part) ("Courts assess agency action based on the official explanations of the agency

decisionmakers, and not based on after-the-fact explanations advanced by agency lawyers during litigation."). Strictly reviewing the administrative record—as we must—confirms that the BIA did not apply a per se rule. Judge Friedland reached the right conclusion before argument. The BIA did not apply a per se rule given the factors it considered other than the traffic delay.

### B

The agencies—after considering the totality of the circumstances—reasonably concluded that Montejo-Gonzalez did not miss her hearing because of exceptional circumstances "beyond the control of the alien" and no "less compelling" than the extreme examples of battery, serious illness, or death. § 1229a(e)(1).

The agencies "provide[d] a reasoned explanation" and reached a conclusion well within the range of reasonable applications of the statutory standard to these facts. *Movsisian v. Ashcroft*, 395 F.3d 1095, 1098 (9th Cir. 2005).

### 1

First, Montejo-Gonzalez did not miss her hearing "because of" any circumstance "beyond [her] control." §§ 1229a(b)(5)(C)(i), 1229a(e)(1). The agencies reasonably concluded that she missed her hearing due, at least in part, to her own failure to plan. The IJ considered Montejo-Gonzalez's admission that "she miscalculated how long it would take for her to get to court." Montejo-Gonzalez admits that "[t]he main reason that [she] did not appear is because there was heavy traffic on the way to the court, and because of [her] miscalculation of time of how long it takes to arrive to court." The majority disagrees with the IJ's determination. But the IJ did not abuse his discretion in

concluding that the "main reason" Montejo-Gonzalez was two hours late for her hearing was because she failed to account for the possibility of heavy traffic. "Traffic and parking trouble are circumstances that an alien may fairly be expected to anticipate." *Perez v. Mukasey*, 516 F.3d 770, 774 n.2 (9th Cir. 2008). And Montejo-Gonzalez admitted that she did not leave early enough to account for possible traffic issues.

The majority reasons around this admission by arguing that "other parts of Ms. Montejo-Gonzalez's declaration make clear that she did not 'miscalculate' the time to get to court." Maj. Op. at 13. But the majority replaces its interpretation of the evidence with the IJ's reasonable interpretation. That is contrary to abuse of discretion review. That reasonable minds could disagree whether Montejo-Gonzalez's "miscalculation" statement constituted an admission of fault only shows that there was no abuse of discretion. *See id.* at 13–14. It was well within the agencies' discretion to interpret Montejo-Gonzalez's statement as an admission of at least partial fault. Indeed, the agencies reasonably concluded that even if the car accidents could have been *a* cause of her absence, they were not *the only* cause.

The declaration supports the agencies' conclusion that Montejo-Gonzalez did not "articulate[] a compelling circumstance that prevented her from appearing at her hearing." It is undisputed that Montejo-Gonzalez "calculated that it would take an hour and a half to get to court accounting for normal traffic," left at 6:45 AM for her 8:30 AM hearing, and therefore gave herself at most 15 minutes to find parking, get through security, and locate her hearing room. *Id*. at 13. If the two car accidents caused

"extraordinary traffic delays," *id.* at 16, it was still within Montejo-Gonzalez's control to leave earlier in the morning.

Given the time it takes to find parking in downtown Seattle and get through security, Montejo-Gonzalez left herself hardly any margin of error for the slightest misestimation of time or any contingency that may have arisen. The statutory language should be read to require a petitioner to give herself an ample cushion to make her hearing on time. This might be a harder case if Montejo-Gonzalez had left at 4:00 AM (or even the night before) and still missed her hearing due to truly exceptional gridlock—caused by, say, an unforeseen terrorist attack or natural disaster. But that is not the case here.

After considering Montejo-Gonzalez's statements and other circumstances, the agencies reasonably concluded that her excuse was not "exceptional" as she did not miss her hearing "because of" an event "beyond [her] control." §§ 1229a(b)(5)(C)(i), 1229a(e)(1).

2

Second, the agencies reasonably concluded that the circumstances were not "sufficiently compelling." Maj. Op. at 8. Thus, even if the traffic conditions were the sole cause of Montejo-Gonzalez's absence and beyond her control, they still did not meet the statutory definition. Traffic accidents and bumper-to-bumper traffic are common contingencies in big cities. At least common enough that it is well within an IJ's discretion to determine whether they constitute exceptional circumstances no less compelling than serious

injury or death.[2]  Indeed, the BIA reasonably concluded that the "typical daily occurrences that may cause mishaps, [traffic] delays, and oversight [by Montejo-Gonzalez] do not qualify as exceptional circumstances."

Even if bumper-to-bumper traffic because of two car crashes in a major metropolitan area could constitute "extraordinary and unusual" traffic, *id*. at 13, it was not unreasonable for the agencies to conclude that the traffic conditions were not sufficiently compelling circumstances under the statute.  Congress has set a high bar: the circumstances cannot be "less compelling" than "battery or extreme cruelty to the alien or any child or parent of the alien, serious illness of the alien, or serious illness or death of the spouse, child, or parent of the alien."  § 1229a(e)(1). While this list is not exhaustive, the listed circumstances must mean something.  Congress's constraint cannot be ignored.  Any excuse must be *at least* as compelling as violent crimes, serious illness, or death involving the petitioner or her family members.  And the agencies reasonably concluded that Montejo-Gonzalez's excuse did not satisfy the statutory standard.

Prior to 1990, the statutory standard governing rescission of *in absentia* orders was whether the petitioner "without reasonable cause fail[ed] or refuse[d] to attend" her hearing. 8 U.S.C. § 1252(b) (amended 1990).  That lower standard was creating a major backlog in the agencies' dockets.  So Congress expressly amended the language to impose the stricter "exceptional circumstances" standard, which supersedes the previous "reasonable cause" standard.  *See*

---

[2] I do not insist, as the majority asserts, that traffic accidents and bumper-to-bumper traffic can never meet the statutory definition.  Maj. Op. at 13. But here it was reasonable for the agencies to so conclude.

*Sharma*, 89 F.3d at 547. We owe deference to Congress's decision to stiffen the statutory standard.

Reviewing for abuse of discretion, this is an easy case. That another IJ might decide the other way in a different case on similar (or even identical) facts does not make the decision arbitrary, irrational, or contrary to law. *See Tadevosyan v. Holder*, 743 F.3d 1250, 1252–53 (9th Cir. 2014) (stating rule that "[t]he BIA abuses its discretion when it acts 'arbitrarily, irrationally, or contrary to law'" (quoting *Movsisian*, 395 F.3d at 1098)). Even if the traffic problems Montejo-Gonzalez encountered were extraordinary, unusual, and beyond her control, it was not an abuse of discretion to conclude that they were less compelling than serious illness or death. Discretion means allowing for a reasonable range of disagreement. To be sure, the statute's strict standard—or application of that standard in a particular case—sometimes may lead to unfortunate or harsh results. But faithfully applying a law enacted by the People through Congress, however harsh it may seem, is not an abuse of discretion.

Under our precedent and given the standard of review, the petition should have been denied. The BIA remains free on remand to once again conclude that there were no exceptional circumstances and deny the petition to reopen. Under the majority's holding, the BIA need only acknowledge that severe traffic conditions could hypothetically contribute to exceptional circumstances under the statute. Then—after thoroughly analyzing the totality of the circumstances causally related to the statute here (which the agencies did already)—the BIA can reach the same conclusion.

## III

Because the agencies faithfully applied our precedent and reasonably analyzed the totality of the circumstances to reach the correct conclusion—and, in any event, did not abuse their discretion—I respectfully dissent.